**In re PEERLESS PLATING COMPANY, formerly Samlin Corporation and formerly 320 Mid Oak Corporation, Debtor.**

**Bankruptcy No. HG 83 02151.**

United States Bankruptcy Court, W.D. Michigan.

March 12, 1987.

Larry A. Ver Merris, Day, Sawdey, Flaggert and Porter, Grand Rapids, Mich., for trustee.

Julie A. Woods, Asst. U.S. Atty., Grand Rapids, Mich., Eva Herrernan, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Thomas K. Bick, U.S. Dept. of Justice, Washington, D.C., Pierre Talbert, U.S.E.P.A., Chicago, Ill., for E.P.A.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

## CLASSIFICATION OF ENVIRONMENTAL CLEAN-UP COSTS IN BANKRUPTCY

The movant, the Environmental Protection Agency ("EPA"), has incurred certain expenses in performing an environmental clean-up at the site of the debtor's former operations. The EPA now asks this Court to determine the estate is liable for these costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9657. The EPA further requests that the Court declare this liability to be an administrative expense of the estate pursuant to 11 U.S.C. §§ 503 and 507, of the Bankruptcy Code, or, alternatively an unsecured claim under 11 U.S.C. § 501(a) despite its late filing in violation of Bankruptcy Rule 3002(c). The EPA further argues that the determination of liability is a non-core matter under 28 U.S.C. § 157.

The debtor, Peerless Plating Company, operated a metal plating shop at the site in question. Financial difficulties stemming from regulatory actions and labor problems forced Peerless to cease operations on June 30, 1983. On August 22, 1983, Peerless filed a petition for relief under Chapter 7 of the Bankruptcy Code. Western District of Michigan Trustee, Inc., was immediately appointed interim trustee.

On September 1, 1983, the EPA was informed by local health officials that cyanide gas had been detected in the atmosphere inside the Peerless plant. The next day, September 2nd, the EPA dispatched William Simes and Geoffrey Watkin to the Peerless site. They determined that an immediate clean-up at the site was necessary. Due to the Labor Day weekend, this work did not begin until September 6th. On that date Mr. Simes telephoned Joe Harper, an employee of the trustee, and Scott Musselman, former president of the debtor, to inform them of the EPA's determination that the site contained hazardous material which had to be removed immediately. Simes informed them that if they did not undertake the clean-up, the EPA would. Musselman replied that the debtor was in bankruptcy and he could do nothing. Harper responded that the estate had no funds, which was true at the time. The clean-up began that day.

The EPA did not make any demand for payments for the clean-up from the Trustee until May 16, 1984. The costs totalled $130,534.14 as of the trial, and may have increased due to subsequent legal work requested by the Court. Due to the trustee's efforts, the formerly penniless estate now has about $110,000.

■ The EPA contends that the estate's CERCLA liability is a non-core matter that this Court must resolve on a report and recommendation basis. Even a cursory examination of 28 U.S.C. § 157 would suffice to show the EPA the clear fallacy of this argument. If the estate has any liability to the EPA, it is either on an administrative claim or a prepetition claim against the estate. Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under Title 11 and all core proceedings arising under Title 11." In § 157(b)(2) Congress has defined "core pro-

ceedings" by way of illustration as including:

A) matters concerning the administration of the estate;

B) allowance or disallowance of claims against the estate;

C) other proceedings affecting the liquidation of the assets of the estate.

These illustrations make it clear that the determination of the estate's liability under CERCLA and the extent of that liability, if any, is a core matter. *See also, In re Franklin Signal Corporation*, 65 B.R. 268, 269 (Bankr.D.MN 1986).

Turning to the question of liability, the EPA asserts that under CERCLA § 9607 any owner or operator of a hazardous waste site, including a bankruptcy estate, is liable for all costs of removal or remedial action. Since the EPA discharged this duty of the estate, its reimbursement would be an administrative expense under Bankruptcy Code § 503(b)(1)(A) which defines administrative expenses as including the actual, necessary costs and expenses of preserving the estate. The trustee argues that these clean-up costs are not actual, necessary costs or expenses of preserving the estate because the estate could have avoided the duty to clean-up the site by abandoning the property under Bankruptcy Code § 554(a) which permits the abandonment of property that is burdensome to the estate. Uncontroverted testimony showed at trial that the plant site is now worthless and that the clean-up bill exceeds all the assets of the estate taken together.

■■■ Any discussion of this question of administrative expenses, abandonment and the estate's duty to clean-up hazardous wastes must begin with *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Although not exactly on point, as the Supreme Court reserved the question of priority of clean-up costs, 106 S.Ct. at 758, n. 2, *Midlantic* does discuss the power of the Bankruptcy Court to authorize abandonment of a hazardous waste site. In *Midlantic* the Trustee sought to abandon a large quantity of highly toxic and carcinogenic waste oil stored in unguarded, deteriorating containers which presented risks of explosion, fire, contamination, injury and death. 106 S.Ct. at 758, n. 3. The Trustee's abandonment had the result of aggravating these dangers because upon abandonment the 24-hour guard service was terminated and the fire suppression system shut down. The Supreme Court held that the Trustee could not abandon this property. The Court wrote that:

In the light of the Bankruptcy trustee's restricted pre–1978 abandonment powers and the limited scope of other Bankruptcy Code provisions, we conclude that Congress did not intend for § 554(a) to pre-empt all state and local laws. The Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety. Accordingly, without reaching the question whether certain state laws imposing conditions on abandonment may be so onerous as to interfere with the bankruptcy adjudication itself, we hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards.

106 S.Ct. at 762. In a footnote to this last sentence the Supreme Court explained further that:

This exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

106 S.Ct. at 762, n. 9. Although this language has been interpreted as permitting abandonment of hazardous waste sites with less than full compliance with the applicable environmental law, see *In re*

*Franklin Signal Corporation,* supra, this Court must respectfully disagree.[1] The clear impact of the *Midlantic* language quoted above would appear to be that a trustee may not abandon a hazardous waste site unless:

1. the environmental law in question is so onerous as to interfere with the bankruptcy adjudication itself; or

2. the environmental law in question is not reasonably designed to protect the public health or safety from identified hazards; or

3. the violation caused by abandonment would merely be speculative or indeterminate.[2]

The question therefore becomes whether CERCLA violates any one of these tests. As to the first test, it is true that the Trustee's compliance with CERCLA could deplete the estate entirely, preventing any distribution to unsecured creditors and reducing other administrative claimants to a vastly reduced pro rata share of what they otherwise would have received. Unfortunately, the Supreme Court did not give us an example of what condition would be so onerous as to interfere with the bankruptcy adjudication itself. But the Court does not think depletion is one.[3] The normal course of affairs in any Chapter 7 is to deplete the estate by liquidating it and distributing it to creditors as required by law. The fact that one claimant or creditor receives the lion's share does not render that claim onerous.

■ As to the second test, the environmental law must be reasonably designed to protect the public health or safety from an

imminent and identifiable harm. Congress has passed CERCLA in response to public concern over hazardous wastes. Congress has decided that situations such as the Peerless site pose a threat. As to the immediacy of the harm, the trustee contests that. To be honest, the EPA's presentation at trial was slapdash. Beyond stating that hazardous materials were present, that there was an unspecified amount of cyanide gas in the air, and that in the opinion of Simes there was an immediate danger the EPA did nothing more to show immediacy of harm. Simes' opinion was conclusory. There was no evidence as to the concentration of the cyanide gas, nor any testimony as to what constitutes a lethal concentration. A better presented case would have developed the potential for lethal harm more vividly, especially since two of the Trustee's witnesses, Harper and Musselman, entered the building and emerged without any signs of ill health and another, Mr. Gifford, not only did that but dipped his hands into the chemical solutions to show they were too diluted to be harmful. The EPA's administrative decision as to imminent harm is relevant but far from controlling. Nonetheless, taking the record altogether, the Court believes there was a immediate harm of the sort Congress meant to prevent by enacting CERCLA.

Lastly, the presence of these hazardous conditions was an ongoing violation of CERCLA, not merely a speculative or indeterminate violation.

■ For these reasons the Court concludes that under *Midlantic* the Trustee could not abandon the Peerless site in viola-

---

**1.** Not only does this Court respectfully disagree, but it does so regretfully. If the matter were one purely of bankruptcy law the Court would agree that the narrow reading given to *Midlantic* by *Franklin Signal* is more in harmony with the Bankruptcy Code. But this Court cannot convince itself that such a narrow reading is consistent with the intent of *Midlantic.*

**2.** A fourth element might be added, taken from the footnote, that the environmental law in question is not reasonably calculated to protect the public health or safety from imminent and

identifiable harm, but that would actually appear to be a restatement of or an elaboration upon the second test.

**3.** As dicta, this Court would speculate that such a law might be one that prohibited abandonment or the closing of at a case even after an estate was exhausted, *see, e.g. In re A & T Trailer Park, Inc.,* 53 B.R. 144, 13 B.C.D. 689 (Bankr.D. Wy.1985) or one which permitted environmental authorities to completely usurp administration of the case.

tion of CERCLA.[4]  If the Trustee can not abandon the property under *Midlantic* without complying with CERCLA, that creates an implicit duty on the Trustee's part to expend the estate's unencumbered assets in cleaning up the site in compliance with CERCLA.

■ The Trustee argues against this result, maintaining that since the debtor's pollution problems were longstanding, the EPA's claim had to have arisen prepetition. Without deciding when a CERCLA claim arises for bankruptcy purposes, even if we assume the EPA did have a prepetition CERCLA claim against the debtor that would not advance the Trustee's position. For under CERCLA § 9607 liability falls upon "the owner or operator" of a facility. The estate was not operating the facility under 11 U.S.C. § 721, so operation would be inapplicable. But under 11 U.S.C. § 541 the estate clearly owned the facility. CERCLA § 9601(20)(A)(ii) defines "owner" as any person owning such a facility. The definition of person given at § 9601(21) provides that:

> "person" means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body.

True, the definition does not explicitly mention bankruptcy estates. However, bankruptcy estates have been held subject to CERCLA, *In re T.P. Long Chemical, Inc.,* 45 B.R. 278 (Bankr.D.Ohio 1985), and this is consistent with the broad and liberal constitution which is required in order to make those responsible for harmful conditions also responsible for cleaning them up. *United States v. Reilly Tar and Chemical Corporation,* 546 F.Supp. 1100 (D.MN 1982).  Of course, title to property abandoned by the estate revests, usually in the

debtor, retroactively to the date of commencement of the case.  *LaRoche v. Tarpley (In re Tarpley),* 4 B.R. 145, 146 (Bankr. M.D.Tenn.1980).  Therefore, if the estate could abandon under *Midlantic,* which it might under different circumstances, the estate could avoid this liability.  But in this situation, it cannot.  The estate itself is an owner and must bear that burden, even if the EPA would also have a prepetition claim against the estate as well.[5]

■ Lastly, the Trustee has argued that if the Court were otherwise inclined to grant the EPA a claim, such a claim should be equitably subordinated because of the EPA's bad faith in this case.  The Court would agree that the EPA's conduct is far from exemplary.  Although the EPA was aware of the pending bankruptcy case, it ignored this Court and simply barged in. This is in marked contrast to the efficiency shown by Frank J. Kelley, Attorney General of Michigan.  Immediately after this case was filed Mr. Kelley filed a motion to compel the Trustee to clean up the Peerless site or to authorize the State of Michigan to do so on administrative expense basis. This is the way the EPA should have proceeded.  Instead, the EPA did not move the Court for administrative expense status until long after the clean-up was completed. Furthermore, before they filed that motion the EPA first sent a letter to the Trustee threatening a lawsuit in federal district court.  However, the Court believes those errors resulted not from malice but from a lack of bankruptcy expertise.  Therefore, the Court will not subordinate the EPA's claim.

■ For the above reasons the Court believes the estate was in violation of CERCLA.  As the estate could not avoid the consequent liability by abandonment in this case, the Trustee had a duty to expend

---

4. *Midlantic* involved state laws while the law in question here, CERCLA, is federal.  However, that is not a significant distinction.

5. The Trustee has also argued that in effect the EPA acted as a commonlaw volunteer in discharging the obligation of the estate, and therefore the estate is not obligated to reimburse the

EPA.  However, we are not working under commonlaw principles here but rather under a statutory scheme, CERCLA, which not only imposes the duty on the estate but also confers a statutory right of reimbursement on EPA if it discharges that duty.

all the unencumbered assets of the estate in remedying the situation, as required by *Midlantic.* Since the EPA discharged this obligation of the Trustee, its motion for administrative expense status is granted. Given this result, the Court need not decide the EPA's alternative application for an unsecured claim.