**In the Matter of MCI, INC., Tax I.D. No. 38–1748795, Debtor.**

**No. 92–CV–71679–DT.**

United States District Court, E.D. Michigan, S.D.

Oct. 27, 1992.

Jeannette A. Paskin, Detroit, MI, for Jennie Muir.

Richard F. Fellrath, Detroit, MI, for trustee.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on debtor Jennie Muir's/MCI, Inc.'s ("debtor") appeal from an Order of a Bankruptcy Court entered November 26, 1991.[1] Bankruptcy Trustee George Dakmak ("trustee") filed a brief in response to the appeal to which the debtor filed a reply. For the reasons set forth below, this Court affirms the Bankruptcy Court's holding in this case.

## I. BACKGROUND

MCI was a closely held corporation. MCI was in the business of removing paint and rust from metal parts. MCI's principal customers were automotive manufacturers and parts manufacturers. Robert Muir was the president and the principal shareholder of MCI. He died in April 1988. Jennie Muir is the independent personal representative of Robert Muir's estate. On April 21, 1988, MCI filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 301.

According to the Voluntary Petition, as of April 20, 1988, the total assets of MCI were $100,000 with total liabilities of $176,337.68, of which $110,602.64 was secured.

The State of Michigan's equalized value of MCI's real property was $232,000.[2] None of the trustee's interim reports assigned a value to the real property.

In July 1989, the trustee brought an Application to Abandon Assets.[3] The Environmental Protection Agency ("EPA") and the Michigan Department of Natural Resources ("DNR") objected to the trustee's application to abandon assets on the grounds that a DNR's preliminary investigation revealed that hazardous and injurious substances existed on the site. The Bankruptcy Court denied the trustee's application to abandon assets and allowed the DNR to have access to MCI's property.

On June 6, 1990, the EPA issued a unilateral Administrative Order ("106 Order") pursuant to § 106 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended by the Superfund Amendment and Reauthorization Act of 1986, 42 U.S.C. § 9606. The 106 Order required MCI to undertake and complete emergency removal activities at the MCI property because the EPA "determined that there may be an imminent and substantial endangerment to public health and welfare or the environment arising from the actual or threatened release of hazardous substances at the site."

In October 1991, the trustee brought a second application to abandon assets. The DNR did not object to the trustee's application. The only issue which the EPA argued was whether it was entitled to payment for the cleanup effort it undertook at the MCI site. Only the debtor objected to the trustee's application and only the debtor appealed the Bankruptcy Court's decision.

On November 14, 1991, the Bankruptcy Court held a hearing on the trustee's application to abandon assets. The Bankruptcy

---

1. Jennie Muir, by virtue of her husband's death, is the principal shareholder of MCI, Inc.

2. MCI owned and operated a paint and rust stripping business as well as a cooper plating operation. In addition, MCI blended stripping and cleaning solutions for commercial sale at the MCI facility. MCI was located at 666 Harper, in Detroit, Michigan. The real property consisted of an office building, 2 warehouses, a production facility, parking lots, and storage areas.

3. As a general rule, a trustee may abandon property of the debtor after notice and hearing if the property is burdensome or is of inconsequential value and benefit to the estate. 11 U.S.C. § 554(a).

Court, on November 26, 1991, issued a Memorandum Opinion and Order in which it ordered the trustee to: (1) turnover approximately $8,000 to the secured creditor, Manufacturers National Bank;[4] (2) abandon the debtor's interest in real property to the EPA and to the DNR, allowing the two agencies to remediate the property and then sell the property to recover their costs; and (3) abandon all unadministered assets.

On appeal, the debtor contends that the Bankruptcy Court made the following errors in its Memorandum Opinion and Order. First, that the Bankruptcy Court erred as a matter of law in allowing abandonment of the property because the Court erroneously concluded that there was insufficient evidence to prove that the site was still hazardous and presented an imminent danger. Second, that the Bankruptcy Court erred in allowing abandonment of the property, because the Court failed to take into account the value of the property when determining whether the real property was of inconsequential value to the estate. Third, that the Bankruptcy Court erred in ordering the trustee to abandoned all unadministered assets of the estate, because the trustee failed to adequately marshall the assets of the estate, and thus failed to satisfy the creditor's demands.[5]

## II. OPINION

### A. STANDARD OF REVIEW

■ The Sixth Circuit, in *In re Caldwell*, 851 F.2d 852 (6th Cir.1988), set forth the applicable standard of review which district courts must apply in bankruptcy appeals. As to conclusions of law, the district courts apply a *de novo* standard of review. *Id.* at 857. However, factual determinations which the bankruptcy court has made are subject to the clearly erroneous standard of review. *Id.* Only where there is the "most cogent evidence of mistake or miscarriage of justice" may the

district court disturb a factual finding made by the bankruptcy court. *Id.*

### B. STANDING

■ As stated above, the debtor is the party who appealed the Bankruptcy Court's opinion. In order for a party to have standing to appeal a bankruptcy court's decision, the party must be "an aggrieved party." *In re Revco D.S., Inc.*, 901 F.2d 1359, 1360 (6th Cir.1990). The general rule is that the debtor is not an aggrieved party. *Troy Plastics v. North Hills II*, 129 B.R. 473, 475 (E.D.Mich.1991) (Duggan, J.) (citing *In re El San Juan Hotel*, 809 F.2d 151, 154–55 (1st Cir.1987)). However, a debtor has standing to appeal a bankruptcy court's order in the following two situations:

(1) [I]f a successful appeal by the debtor would create an estate that has assets in excess of liabilities; or (2) an appeal taken from orders that affect the terms, conditions and extent of a debtor's discharge.

*Troy Plastics*, 129 B.R. at 475 (citing *In re El San Juan Hotel*, 809 F.2d at 155 n. 6).

■ In the instant case, the Bankruptcy Court's Order of Abandonment affects the terms, conditions and extent of the debtor's discharge in bankruptcy, because the Order of Abandonment leaves the debtor personally liable for the EPA's clean-up costs. Accordingly, the debtor has standing to bring this appeal.

### C. ABANDONMENT OF THE ESTATE

The debtor contends that, as a matter of law, the Bankruptcy Court erred in allowing the trustee to abandon the real property. The first issue which this Court must address is whether the Bankruptcy Court's alleged error constituted a factual finding or a conclusion of law. The debtor characterizes the issue on appeal as whether "the Bankruptcy Court erred as a matter of law in concluding that there was no imminent danger or harm to the public" in permitting

---

**4.** The Memorandum Opinion and Order, as well as the debtor's brief on appeal, erroneously state that Michigan National Bank was the secured creditor.

**5.** The debtor did not appeal the Bankruptcy Court's determination that the trustee turnover $8,000 to Manufacturers National Bank.

the trustee to abandon the real property. A close reading of the debtor's brief on appeal and the Bankruptcy Court's opinion reveals the following. First, the Bankruptcy Court made the following conclusions of law which pertain to the right of the trustee to abandon the real property in issue:

1. that the property did not constitute an imminent harm or danger to the public;

2. that the trustee had no unencumbered assets to finance a cleanup of the soil; and

3. that based on these conclusions of law, that the trustee shall abandon the debtor's interest in the real property to the possession of the E.P.A. and the D.N.R.[6]

The bankruptcy court based the above-mentioned conclusions of law on the following factual findings that the bankruptcy court made:

1. the EPA cleaned up the following hazardous substances on MCI's property:

   a. 500–700 containers of miscellaneous chemicals;

   b. 225 drums of corrosive waste;

   c. 200 drums of organic and solvent waste;

   d. 7,700 gallons of solvent waste in seven above ground vats;

   e. 7,000 gallons of sledge;

   f. 80 drums of unknown substances;

   g. 30,000 drums of corrosive liquids in fourteen vats;

   h. 6 inches of corrosive sludge (approximately) in vats; and

2. the total cost of the clean up was $905,973.35;

The Bankruptcy Court, in its conclusions of law, also noted that neither the trustee, the EPA, nor the debtor furnished the Bankruptcy Court with information on the issue of whether the real property constituted an imminent harm or danger to the public. As stated above, this Court will review the above-mentioned conclusions of law *de novo*. However, the bankruptcy court's factual determinations will only be disturbed where there is the "most cogent evidence of mistake or miscarriage of justice." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988).

11 U.S.C. § 554(a) provides that:

After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

■ A trustee's right to abandon property pursuant to § 554(a) is not an absolute one. The United States Supreme Court, in *Midlantic Nat'l Bank v. New Jersey Dept of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), held that Congress, when it enacted § 554(a), did not grant a trustee the right to "abandon property in contravention of a state statute or regulation that is reasonably designed to protect public health or safety from identified hazards." 474 U.S. 494, 507, 106 S.Ct. 755, 762 (1986). Although the Supreme Court did not allow the trustee to abandon the property in issue in *Midlantic*, the Supreme Court accentuated the point that the exception it recognized to the trustee's power to abandon property pursuant to § 554(a) was a narrow one. The Supreme Court stated that:

It [the exception] does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Id.* at 507 n. 9, 106 S.Ct. at 762 n. 9.

■ Courts that have addressed a trustee's right to abandon property after the *Midlantic* decision have consistently held that, where the property in issue violates state environmental laws, that the trustee may still, in limited situations, abandon the

---

6. The debtor contends that there is a question as to who owns the real estate, because the Bankruptcy Court denied a motion for reconsideration of its Memorandum Opinion and Order.

However, since neither the EPA nor the DNR appealed the Bankruptcy Court's decision, the issue of ownership is not properly before this Court.

site.[7] In determining whether abandonment is proper, the courts examine two factors. First, whether the property constitutes an imminent threat to the health and safety of the public. Second, whether the estate has unencumbered assets. If the estate has unencumbered assets, then "the bankruptcy court should require stricter compliance with state environmental law before abandonment is permitted." *In re Better–Brite Plating, Inc.*, 105 B.R. 912, 919 (Bankr.E.D.Wis.1989).

Here, the debtor appeals the Bankruptcy Court's decision allowing abandonment of the real estate on the ground that the Bankruptcy Court improperly concluded that there was no imminent danger of harm to the public.[8] MCI contends that if the bankruptcy court, in 1989, banned the trustee from abandoning the real property on the grounds of imminent harm to the public, that, in 1991, there was even more information before the Bankruptcy Court that would have sustained a finding that the property should not be abandoned because of the imminent harm to the public safety. The debtor also argues that the trustee bears the burden of proving that there is no imminent danger to the public and that the trustee failed to carry this burden.

At the outset, this Court notes that the debtor does not challenge any of the Bankruptcy Court's factual determinations, and thus this Court accepts the Bankruptcy Court's factual determinations as being correct. The trustee produced evidence that the surface area of the property was not an imminent threat to the public health.

The EPA expended nearly one-million dollars in clean-up costs at this site. Furthermore, unlike the situation in 1989, neither the EPA nor the DNR, in 1991, opposed the trustee abandoning the site. A reasonable inference from this is that the agencies did not opine that the property was an imminent threat to the public. Moreover, the debtor has failed to offer any *evidence* that the site in issue constitutes an imminent threat to the public. The fact that the Bankruptcy Court, in 1989, held that the trustee could not abandon the property is simply irrelevant to the Bankruptcy Court's 1991 determination.

The only meritorious argument that the debtor raises on appeal is the fact that the Bankruptcy Court stated that "very high levels of petroleum hydrocarbons far exceeding allowable levels of the Michigan Safe Drinking Water Act" existed in the soil in 1989.[9] The Bankruptcy Court went on to state that since no party has come forward with any evidence on the issue of imminent harm to the public, that no imminent harm exists at this site.[10] Therefore, what the Bankruptcy Court did was to hold that in spite of the violation of state environmental laws, that there still was not an imminent threat of harm to the public.

■ This Court agrees with the Bankruptcy Court on this issue. It is undisputed that the EPA expended nearly one-million dollars to clean up the above ground part of this site. It is also undisputed that the trustee abandoned MCI's interest in the real property *to the possession of the EPA and the DNR*[11]. This completely under-

7. *See, e.g., In re Smith–Douglass, Inc.*, 856 F.2d 12 (4th Cir.1988); *In re Anthony Ferrante & Sons, Inc.*, 119 B.R. 45 (D.N.J.1990); *In re Doyle Lumber, Inc.*, 137 B.R. 197 (Bankr.W.D.Va. 1992); *In re Better–Brite Plating, Inc.*, 105 B.R. 912 (Bankr.E.D.Wis.1989); *In re Microfab, Inc.*, 105 B.R. 161 (Bankr.D.Mass.1989); *In re Purco*, 76 B.R. 523 (Bankr.W.D.Pa.1987); *In re Oklahoma Refining Co.*, 63 B.R. 562 (Bankr.W.D.Ok. 1986).

8. MCI did not appeal the bankruptcy court's determination that the trustee had no unencumbered assets to finance a clean up of the soil.

9. To date, there is no evidence that the soil has been cleaned up.

10. The Bankruptcy Court noted that the money which the EPA expended on this site was limited to the remediation of the above ground problems at the site.

11. This Court notes that upon its own research it discovered, *In re Wall Tube & Metal Products Co.*, 831 F.2d 118 (6th Cir.1987); the only Sixth Circuit Court of Appeals decision involving the issue of abandonment and violations of state environmental laws. Although it can be argued that *In re Wall Tube & Metal Products Co.* read the *Midlantic* exception to the trustee's abandonment power more expansively than the cases cited above, it is important to note the following passage from *In re Wall Tube & Metal Products Co.*:

mines the debtor's contention that the Bankruptcy Court, by allowing abandonment in this case, "renders the public health and safety inadequately protected since the effect of abandonment is that the ownership and control of the asset is reinstated in the [d]ebtor with all rights and obligations as before filing a Petition in Bankruptcy." This is simply not true. The Bankruptcy Court ordered that the EPA and the DNR, governmental agencies which protect the public from environmental harms, take possession of the property, clean it up, and then sell it.

Accordingly, this Court, upon a *de novo* review of the Bankruptcy Court's decision permitting the trustee to abandon the real property in issue, finds that the Bankruptcy Court properly ordered abandonment in this case on the grounds that there is no imminent threat of harm to the public and that the trustee had no unencumbered assets to finance the clean up of the soil. Therefore, this Court affirms the Bankruptcy Court's decision permitting the trustee to abandon the property.

## D. VALUATION OF THE REAL PROPERTY

█ Next, the debtor appeals the following factual determination which the Bankruptcy Court made:

The real property discussed herein had a state equalized valuation of approximately $230,000. However, the trustee asserts that the value of the real property as contaminated has diminished.

[A] continuing, potentially disastrous environmental health hazard with no one clearly responsible for remedial action [would occur if abandonment was allowed in the face of violations of state environmental laws].
831 F.2d at 122.

This is simply not the situation in the case at bar because the EPA and the DNR are in possession of the property and are under a duty to clean up the soil. Therefore, unlike *In re Wall Tube & Metal Products Co.* were no one was responsible for remedial action, in the instant case, the governmental environmental agencies are in charge of the remedial action. Therefore, the case at bar is significantly distinguishable from *In re Wall Tube & Metal Products Co.*

The debtor contends that the Bankruptcy Court's factual finding as to the value of the property are silent as to any facts which led the Bankruptcy Court to this conclusion.[12] The debtor seeks to have this Court remand this issue to the Bankruptcy Court in order for the trustee to order an independent appraisal of the property.[13] This Court disagrees with MCI's argument.

The Bankruptcy Court stated that "a unique situation arises when the value of the debtor's real property as contaminated, has declined so far that it is unmarketable." MCI stated in its bankruptcy schedule that the state equalized value of the property was $232,000. It is an uncontested fact that the clean up costs to date amount to nearly one-million dollars. It is also uncontested that the soil still must be cleaned up. Furthermore, the debtor stated in its first filing with the bankruptcy court that "[t]his property has been for sale for nine months and there has been no buyer." Although the Bankruptcy Court did not rely on it, there is also evidence in the record that shows that the broker, which the trustee retained, tried for two years to sell the property without any success.

In this case, the Bankruptcy Court's factual finding that the value of the property diminished to the point where it is unmarketable is not ambiguous or silent. The reason the property is worthless is due to the amount the EPA has expended in cleanup costs, notwithstanding the fact that additional cleanup costs will be incurred when the soil is cleaned up. *See e.g. In re Better–Brite Plating, Inc.,* 105 B.R. 912, 918

12. The significance of this factual finding is that under 11 U.S.C. § 554(a) a trustee may only abandon an asset of the estate if the asset is either burdensome or is of *inconsequential* value and benefit to the estate.

13. [The district court] may not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination. *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988) (citations omitted).

(Bankr.E.D.Wis.1989) ("because of cleanup costs, the ... properties are virtually unmarketable and without value"). Therefore, this Court will not remand the case to the Bankruptcy Court.

### E. MARSHALING OF ASSETS

Finally, the debtor appeals the order of the Bankruptcy Court allowing the trustee to abandon all unadministered assets of the estate. Since the debtor is appealing the Bankruptcy Court's conclusion of law, this Court will employ *de novo* review to this holding.

The crux of the debtor's argument is that it had a potential buyer for some of the forklifts and that the trustee failed to respond to such requests. The following items are relevant to this Court's determination of the issue:

1. The City of Detroit has a $13,371 personal property tax lien on the debtor's personal property.

2. Manufacturers National Bank still has its secured position of $27,692; and

3. On October 13, 1989, the bankruptcy court entered its order lifting the automatic stay and ordering a turnover of the debtor's personal property to Manufacturer's National Bank.

Trustees have a duty not to administer property that will not generate funds for unsecured parties. *See* Handbook for Chapter 7 Trustees at 138. Pursuant to the order lifting the automatic stay, Manufacturer's bank controls the forklifts in question. The trustee has no authority to sell the forklifts. Furthermore, as to any other personal property that is also an "unadministered asset", such property is either in control of Manufacturers Bank or is subject to liens so that if the trustee tried to sell the property it would not generate funds for unsecured creditors. Therefore, the trustee did everything it could to maximize the realization on liquidation of the estate. Thus, the Bankruptcy Court properly ordered the abandonment of all unadministered assets. The debtor has made no showing that the assets were not properly marshalled. Therefore, this Court, upon a *de novo* re-

view of the Bankruptcy Court's decision, affirms the Bankruptcy Court's conclusion that the trustee could abandon all "unadministered assets" of the estate.

### CONCLUSION

For all of the reasons set forth above, this Court AFFIRMS the Bankruptcy Court's Memorandum Opinion and Order dated November 26, 1991.

IT IS SO ORDERED.