**In re PARIS INDUSTRIES CORPORATION, Vitro Agate Corporation, Otselic Enterprises, Inc., Stylecrafters Corporation, Gladding Cordage Corporation, Debtors.**

**Bankruptcy Nos. 87–20111 to 87–20115.**

United States Bankruptcy Court,
D. Maine.

Dec. 7, 1987.

---

1. There is no evidence of dishonesty on the part of the debtors in this case.

Charles Glerum, Peter Fine, Choate, Hall & Stewart, Boston, Mass., for State Street Bank.

David A. Munro, Ann Goldweber, Asst. Attys. Gen., Albany, N.Y., for movant.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

On August 4, 1987, the Chapter 11 Trustee of Gladding Cordage Corporation, an affiliate of Paris Industries Corporation, filed a notice of intended sale of Gladding's real and personal property, situated at South Otselic, New York.[1] The proposed sale resulted from a written offer, dated June 26, 1987, received from Continental Cordage Corporation of Cazenovia, New York. The total sale price was $750,000, of which $275,000 was for the real estate and $475,000 was for the personal property.

The offer and the Trustee's notice of proposed sale provided that the real estate be sold "free and clear of all claims including but not limited to, all claims arising from violation of local, state or federal environmental ... laws ... to the extent that such claims are in existence prior to, up to and including the closing Date...."

A hearing was held on the proposed sale on August 4, 1987. At the hearing it was revealed that prepetition discharges of hazardous chemical waste at the Gladding facility threatened the water supply of the Hamlet of South Otselic. The court declined to authorize a sale of the real estate free and clear of environmental claims. *See Midlantic Nat. Bk. v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *In re Stevens*, 68 B.R. 774 (D.Me. 1987). The sale of the personal property, however, was authorized on that date, resulting in proceeds of $475,000.00.

State Street Bank and Trust Company, (State Street), as of July 10, 1987, was owed in excess of $10,000,000, secured by valid and perfected first mortgages and security interests in all of the debtors' assets, including a first security interest in the Gladding personal property which was sold free and clear of all liens and security interests, with valid liens and security interests to attach to the proceeds of the sale.

The Trustee, on July 29, 1987, filed a motion for authorization, among other things, to pay State Street the proceeds of the sale of the Gladding personal property.

On August 27, 1987, the State of New York, by its Attorney General, filed an objection to the Trustee's motion for authorization to pay State Street. The parties have filed briefs, and oral argument was held on November 9, 1987. The Court concludes that the proceeds of the sale should be paid to State Street Bank, whose valid and perfected first security interest attached to the proceeds.

## DISCUSSION

Most of New York's arguments are directed to the duty of the trustee to comply with State and Federal environmental laws and to the proposition that the cost of cleanup by a State or Federal agency is allowable as an administrative expense under 11 U.S.C. § 503(b)(1)(A) and entitled to priority under Section 507(a)(1).[2] The court agrees with New York on these issues. *See Midlantic, supra, New York v. Shore Realty*, 759 F.2d 1032 (2d Cir.1985), *In re Wall Tube and Metal Products*, 831 F.2d 118 (6th Cir.1987), *In re Stevens, supra.*

The genuine issue is whether New York has some sort of super priority lien which displaces State Street's valid and perfected first security interest in the proceeds of the sale of the debtors' personal property.[3] The court finds that it does not.

New York's position on the issue is stated in its objection to the trustee's motion:

---

**1.** Some of the personal property was located at Cuyler, New York.

**2.** These issues are academic because there are few, if any, unencumbered assets in the estate.

**3.** These proceeds are "cash collateral" as defined by 11 U.S.C. § 363(a) and their use by the trustee is restricted by Section 363(c)(2).

The Trustee should be required to use any and all assets of the estate, to the extent necessary, *whether secured or unsecured* to effectuate a clean-up prior to payment of any creditors. Public policy considerations require that the lives and safety of the innocent public take priority over the claims of creditors. (emphasis added)

New York has cited several cases in support of its super priority lien theory, all of which fall short of the mark. For example, the only issue in a recent Sixth Circuit opinion cited by New York was, as stated by the Court:

[W]hether the response costs, [under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA)] recoverable by the State of Tennessee ('State') under Federal law, are allowable as administrative expenses in a chapter 7 bankruptcy proceeding.

*Wall Tube,* 831 F.2d at 119.

The Sixth Circuit, not surprisingly, ruled in the affirmative. The issue in *In re Pierce Coal,* 65 B.R. 521 (Bankr.N.D.W.Va. 1986), also cited by New York, was essentially the same.

The only case relied upon by New York that even obliquely addresses the issue is *In re Distrigas Corp.,* 66 B.R. 382 (Bankr. D.Mass.1986). In that proceeding Judge Lavien stated that the State of New Jersey

. . .

can proceed regardless of the debtor's Chapter 11 to order the debtor to clean up the property or clean it itself and obtain a lien on the debtor's property to reimburse itself, provided it could do so under appropriate law had there been no bankruptcy.

*Id.* at 386.

The real estate involved in *Distrigas* was located in the State of New Jersey which has enacted the so-called New Jersey Spill Act, N.J.S.A. 58:10–23.11 to 58:10–23.24. That Act grants New Jersey a super priority lien for cleanup costs. However, the New York legislature has refused to enact super lien legislation because of its impact upon banks and other creditors and because of other concerns. The language of

the Senate Report issued in connection with the legislation is significant:

[A]s the bill is currently drafted, it would have retroactive, as well as prospective, application. Because of the possibility of a retroactive application, the bill could abridge existing contracts among mortgage bankholders and other creditors. This, understandably, was of considerable concern to many banking institutions. If, in fact, this lien would supersede **all other** liens on property, it could become increasingly difficult for an individual to obtain a mortgage. Even reasonable diligence by a lender during a regular underwriting and closing process could not guarantee that the mortgaged property would not later become the subject of a super priority lien under this bill. Further, if a spill were to occur on another parcel of property owned by the same individual, but in no way related (i.e. business **versus** home), the lien could be transferred to an unknowing third party which, in this case, would be the institution holding the mortgage on the home.

*New York Senate Committee on Environmental Conservation 1985 Legislative Report. See* Murphy, *The Impact of "Superfund" and Other Environmental Statutes in Commercial Lending and Investment Activities,* 41 Bus.Law. 1133 (1986). *See also* Klotz & Sinkotos, *Lender Liability Under Federal and State Environmental Law,* 92 Com.L.J. 275 (Fall 1987).

Further, this Court agrees with the reasoning of Bankruptcy Judge Harold White in *In re T.P. Long Chemical, Inc.,* 45 B.R. 278 (Bankr.N.D.Ohio 1985). In that case BancOhio held a perfected security interest in the proceeds of the debtor's personal property which was sold at auction by the trustee. The real estate was not property of the estate and unencumbered assets were insufficient to cover clean up costs. The EPA conducted a clean up of the Long facility and asserted a claim against the proceeds of the sale of the personal proeprty in which BancOhio had a security interest. The EPA relied upon Section 506(c) of the Code, which, Judge White explained, "represents an exception to the traditional

rule that costs of administration of a bankruptcy estate may not be charged against secured creditors." *Id.* at 287.

Section 506(c) provides that:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c).

Judge White had no difficulty in finding that the EPA's costs in removing the hazardous waste were reasonable and necessary as required by Section 506(c). However, in denying EPA's claim to the proceeds, he found that EPA's costs were of no benefit to BancOhio, another important requirement of Section 506(c).

In *Long Chemical*, the EPA argued, as does New York in this case, that as a matter of equity it should be able to recoup its costs from the secured creditor. The EPA argued that it should be granted an "equitable lien." In rejecting this argument Judge White wrote:

The court finds, as a matter of equity, the E.P.A. may not recoup its expenses from BancOhio. BancOhio has already suffered a loss on its loan to the debtor. This is a commercial risk it assumed when it agreed to extend credit to the debtor. It would be inequitable, however, to make BancOhio bear the risk of all damage caused by property in which it holds a security interest.

*Long Chemical*, 45 B.R. at 289.

That is the situation in this proceeding. State Street has suffered extensive losses on its loans to these debtors. The court will not, in the absence of legislation or other authority, add to these losses by making State Street an insurer of all risks caused by its collateral. *See also* the Bankruptcy Court decision in· *In re Stevens* where the State of Maine, unsuccessfully, urged Judge Goodman to impose a "constructive Statutory Lien." 53 B.R. 783 (Bankr.D.Me.1985), *Rev'd on other grounds*, 68 B.R. at 774.

New York, in its commendable zeal to protect the environment and the public treasury, argues that this court, a matter of "public policy," should create a super priority lien, with retroactive effect, in favor of entities who incur costs in cleaning up hazards to the environment. Such a creation would push us far beyond the existing frontier established by reported cases and existing legislation, with serious, and perhaps unforeseen, consequences to commercial lending and investment activities and other parts of the nation's economy. The New York Legislature has refused, in its wisdom, to create such a lien, as has Congress. The Comprehensive Environmental Response, Compensation and Liability Act of 1980 [CERCLA], 42 U.S.C. § 9601 et seq., as enacted by Congress, and substantially amended in 1986, provides for a lien in favor of the United States, but only upon "real property." 42 U.S.C. § 9607(*l*)(1) (Supp.1987). Such lien is subject to the "rights of any ... holder of a security interest ... whose interest is perfected under applicable State law before notice of the lien has been filed...." 42 U.S.C. § 9607(*l*)(3) (Supp.1987). Consequently, this Court must turn back New York's assault upon State Street's valid and perfected security interest in the proceeds of the sale of the debtor's personal property.

New York, in its brief, raised another issue which must be addressed. It requested "expedited discovery," in order to determine if State Street had become sufficiently entangled in the affairs of the debtor so as to be deemed an "operator" under CERCLA. 42 U.S.C. § 9607(a)(1) (1983 & Supp.1987). New York's request was denied in open court at oral argument.

It is obvious that other proceedings will be necessary before this case is closed. On October 15, 1987, New York requested the U.S. Environmental Protection Agency, Office of Emergency and Remedial Response, to "provide funding and conduct a removal action for the cleanup of hazardous materials at this [Gladding] site." After the clean up of the real estate, the EPA or the State (or both) may seek, under CERCLA, to recover the costs from the "owner and operator" of the facility. 42 U.S.C. § 9607

(1983 & Supp.1987). New York will have an opportunity to conduct timely discovery at that time.

An appropriate order will be entered.