**In re BETTER–BRITE PLATING, INC., Debtor.**

**Bankruptcy No. 85–03325.**

United States Bankruptcy Court, E.D. Wisconsin.

Sept. 22, 1989.*

---

\* The State of Wisconsin Department of Natural Resources has filed an appeal October 17, 1989.

Robert M. Hunter, Madison, Wis., for Asst. Atty. Gen., State of Wis., Dept. of Justice.

Herbert C. Liebmann III, Green Bay, Wis., for University Bank of Green Bay.

Joseph C. Niebler, Brookfield, Wis., for John Zenner.

Frederick S. Phillips, Washington, D.C., for U.S. Dept. of Justice, Environmental Enforcement Section.

David J. Matyas, De Pere, Wis., trustee.

Reinhart, VanDeuren, Norris & Rieselbach, for John D. Lewis.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

This case concerns the liability of the bankruptcy estate and of a secured creditor, under state and federal environmental laws, for the cost of cleaning up hazardous wastes, and the ability of the trustee to abandon real estate containing hazardous wastes. Detailed findings of fact and conclusions of law have been filed.

The debtor filed a petition under chapter 11 of the Bankruptcy Code on September 5, 1985. It had been engaged in the electroplating business since 1963, was operating a zinc plating shop (zinc shop) and a chrome plating shop (chrome shop) in De Pere, Wisconsin, and it had been in violation of the State of Wisconsin Department of Natural Resources (DNR) environmental regulations for many years. The chrome shop had environmental problems since 1978, and the debtor was obligated to provide a wastewater treatment facility for the zinc shop where untreated wastewater was being discharged into the city sewer system. The debtor had previously operated a chrome plating shop on leased premises owned by John D. Lewis in Kaukauna, Wisconsin (Kaukauna shop), but that lease had expired prior to the filing of the petition. The University Bank of Green Bay, Wisconsin (bank) held mortgages or security interests in virtually all of the debtor's real and personal property, including cash and receivables, as collateral for outstanding loans in excess of $260,000.

A replevin action by the bank and the prospect of tax lien filings triggered the filing of the chapter 11 petition. The debtor was deeply insolvent, had been losing money for at least two years, and had been operating on trust fund taxes. Its schedules showed total liabilities of $783,530, of which $269,756 was for priority taxes, including $202,500 of state and federal payroll taxes.

The bank was undersecured. Because of contamination, the chrome shop and zinc shop real estate had a negative value, and if the bank were to take possession of the tangible personal property and receivables, it would sustain a loss in excess of $100,000.

After a hearing on the bank's motion for relief from stay and the debtor's motion for use of cash collateral, and in the belief that the Kaukauna shop had DNR approved equipment and could produce profits and thereby provide a solution to the debtor's problems, the debtor was permitted to continue in business under a new manager, John Zenner. The debtor shut down its own chrome shop and leased the Kaukauna shop, but the Kaukauna operations ended within a few months when a letter was received from DNR stating that the shop was not in compliance with DNR requirements.

Hazardous waste material was generated and accumulated at the chrome shop, the zinc shop and the Kaukauna shop prior to September, 1985, but it is uncertain whether the waste material at the Kaukauna shop was generated by the debtor. During the chapter 11 proceedings, the debtor generated and accumulated additional barrels of waste material at the zinc shop and Kaukauna shop. Most of the hazardous

waste at the Kaukauna shop and a substantial portion of that at the zinc shop was generated prior to the chapter 11 proceedings. The amount accumulated prepetition as against that accumulated postpetition cannot be determined with any degree of accuracy.

Zenner attempted to dispose of the barrels of accumulated waste at the zinc shop and the Kaukauna shop, but the hazardous waste hauler refused to take it because it was too wet. In fact, such material was actually shipped from the Kaukauna plant and then brought back even though the shipping costs had been paid. It was brought back because it was too wet for landfill. In addition, Zenner attempted to develop and install a wastewater pretreatment facility at the zinc shop, but the system failed to meet the DNR's requirements.

The DNR had commenced a state court action against the debtor in 1980 seeking forfeitures and cease and desist orders in regard to the chrome shop operation, which action was still pending when the chapter 11 petition was filed. A short time after the petition was filed, the DNR commenced a second state court action concerning the pretreatment of wastewater at the zinc plant. In the latter case, cease and desist orders were issued in May, 1986, and contempt proceedings followed. After July, 1986, the zinc shop continued to operate, but on a limited basis and without discharging wastewater.

Around September, 1986, the federal Environmental Protection Agency (EPA) initiated response (cleanup) activities at the chrome shop, including the sampling, excavating and disposing of contaminated materials. EPA also spent monies investigating the zinc shop location. By October 4, 1988, EPA had spent $147,250.60 in cleanup operations at the chrome shop and an additional $9,969.97 in investigating hazardous waste conditions at the zinc shop. Additional cleanup action by EPA will be needed at the chrome shop and zinc shop, but there was no evidence as to its cost.

On August 27, 1986, the case was converted to a case under chapter 7. The trustee had only a few hundred dollars, with all other assets subject to valid encumbrances. His options were an abandonment, or a sale with the agreement of the bank, but the real estate at the chrome and zinc shops was unsalable. Zenner was apparently the only prospective buyer, and then only if the bank would provide the financing.

A corporation was set up by Zenner for the specific purpose of buying the debtor's personal property, i.e., the non-contaminated assets of the estate. The sale price was $230,000, to be paid with interest over a five year period, and by agreement with the bank, the trustee would receive $4,600 (2% of the proceeds) for the benefit of unsecured creditors. In addition, the trustee was to lease the two parcels of real estate for $1 a month, along with an option to purchase, to a second such corporation. The leases were intended as a structure by which there could be a cleanup of the real estate by Zenner if at all economically feasible. The court approved the sale and the leases. Between December 18, 1986 (the date of the sale) and October 20, 1988, the bank was paid a total of $10,127.95 on the sale price of $230,000 plus interest.

When Zenner's cleanup efforts continued to be unsuccessful, the trustee moved to abandon the two parcels of real property located at the chrome shop and zinc shop together with the leases. Objections were filed by the State of Wisconsin and by John D. Lewis, owner of the Kaukauna shop. EPA does not oppose abandonment provided the order (1) grants EPA continued access to the properties in order to conduct decontamination activities, and (2) grants EPA an administrative expense lien upon each of the properties, with priority over the bank's mortgages to the proceeds of any sale of the property subsequent to decontamination.

Their opposition to abandonment is part of a continuing effort by the state (DNR) and Lewis to assess cleanup costs against the bank's collateral, or the sale proceeds of such collateral. They have filed motions

to compel the debtor,[1] and then the trustee, to pay for the cleanup of hazardous wastes at the chrome shop, zinc shop and Kaukauna shop. Referring to the trustee's duty under 28 U.S.C. § 959(b) to comply with state laws,[2] and the cleanup responsibility imposed upon him by Section 144.76(3) of the Wisconsin Statutes,[3] they argue that the trustee should be required "to contract with (and pay for) an independent contractor" to clean up the various shop sites.

As clean-up costs are estimated to be as much as $400,000 and the trustee has less than $5,000 of unencumbered funds in his possession, it is obvious that the trustee cannot possibly comply with an order such as that requested by Lewis and the state. They contend, however, that the trustee can comply by using the bank's money, that § 506(c) of the Bankruptcy Code [4] empowers the trustee to assess the costs of such cleanup against the bank's collateral, as necessary costs of preserving or disposing of such collateral. Pending a ruling by the court, the bank has held in escrow the $10,127.95 of sale proceeds received to date. Although not formally joining in the above motions, EPA noted that if the motions were granted, it would be entitled to the same treatment.

 Neither the facts nor the law support the position taken by Lewis and the DNR with respect to the property sold on December 18, 1986. It was not contaminated by any hazardous wastes generated by the debtor, whether prepetition or postpetition. In fact, the evidence indicated it was not contaminated at all.[5] None of the monies expended by the EPA, DNR or Lewis were spent on testing, cleaning, preserving or disposing of that property. There was no evidence as to the actual amounts spent or to be spent by Lewis or the DNR, or that such amounts were reasonable and necessary costs. Contrary to the contention of the state, the bank did not benefit by the debtor's continued operation. The debtor sustained substantial losses throughout its chapter 11 operations, and the bank's position worsened accordingly, ultimately by more than $100,000.

Postpetition cleanup costs of hazardous wastes from property of the bankruptcy estate constitute a first priority administrative expense, *In re Smith–Douglass, Inc.*, 856 F.2d 12, 17 (4th Cir.1988); *In re Peerless Plating, Inc.*, 70 B.R. 943 (Bankr.W.D. Mi.1987); *In re Mowbray Engineering Co., Inc.*, 67 B.R. 34 (Bankr.M.D.Al.1986); *In re Stevens*, 68 B.R. 774 (D.Me.1987), *In re Wall Tube & Metal Products Co.*, 831 F.2d 118 (6th Cir.1987), but they do not take priority over a creditor's secured claim. *In re Smith–Douglass, Inc.*, 856 F.2d at 17; *In re T.P. Long Chemical, Inc.*, 45 B.R. 278 (Bankr.N.D.Ohio 1985); *In re Corona Plastics, Inc.*, 99 B.R. 231 (Bankr.N.J. 1989); *In re Paris Industries Corp.*, 80 B.R. 2 (Bankr.Me.1987); *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546 (9th Cir.1987).

1. So far as the evidence showed, Zenner did his best during the chapter 11 proceedings, albeit without success, to bring the zinc shop and Kaukauna shop into compliance with the DNR's requirements.

2. § 959. Trustees and receivers suable; management; State laws.
 (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

3. § 144.76 Hazardous substance spills.

(3) Responsibility. A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of this state.

4. § 506 Determination of secured status.
 (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

5. The assets that were sold consisted of tools, equipment, materials and supplies, business records, receivables, rights to the name "Better-Brite," and the like.

As noted by Justice O'Connor in *Ohio v. Kovacs,* 469 U.S. 274, 286, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985), Wisconsin can protect its interests in the enforcement of its environmental laws by giving lien status to cleanup judgments. It has no statute allowing a super-priority lien in favor of the DNR, the EPA or Lewis that would take priority over the bank's security interest in the property sold or the sale proceeds. In the absence of any such lien, the bank is entitled to the property sold on December 18, 1986, together with the sale proceeds, free and clear of any claims asserted under § 506(c) of the Code.

[3] Pursuant to § 554(a) a trustee may abandon burdensome property, but not "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 507, 106 S.Ct. 755, 762, 88 L.Ed.2d 859 (1986). Since the trustee is required to comply with such state laws concerning hazardous waste sites, it follows that the cost of cleanup must be treated as an administrative expense, and to the extent there are unencumbered assets available in the bankruptcy estate, the trustee cannot abandon such property without cleaning it up. *In re Peerless Plating, Inc.,* supra; *In re Stevens,* supra.

■ The exception to the abandonment power set forth in *Midlantic* is a narrow one. Where the trustee has no unencumbered assets to finance a cleanup and there is no imminent harm or danger to the public, trustees have been permitted to abandon property, even though violations of state environmental laws exist. *In re Smith–Douglass, Inc.,* supra; *In re FCX, Inc.,* 96 B.R. 49 (Bankr.E.D.N.C.1989); *In re Oklahoma Refining Co.,* 63 B.R. 562 (Bankr.W.D.Ok.1986); *In re Purco,* 76 B.R. 523 (Bankr.W.D.Pa.1987). The unencumbered assets in this case are far short of the estimated $400,000 cost of cleanup, and there is no evidence that there is any imminent harm or danger to the public. EPA has been engaged in response activities since 1986, and DNR has two law suits

pending and has been monitoring the debtor's operations at the two sites for years.

EPA did not oppose abandonment, but it requested an order granting EPA continued access to the properties to conduct decontamination activities. The trustee's abandonment notice informed all parties in interest that he would request the court to order such access, and there have been no objections. There is no reason why DNR should not be given similar access.

■ EPA also asked that it be granted an administrative expense lien upon the real property at each site, with priority over secured creditors to the proceeds of any sale of the property subsequent to decontamination. With some defenses not here material, Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607(a) imposes liability on the owner or operator of any facility for "all costs of removal or remedial action incurred by the United States Government." Section 9607(*l*) creates a federal lien for such costs, but the lien is subject to prior valid liens.

■ Pursuant to section 144.76(3) of the Wisconsin Statutes, the debtor and trustee, as persons in possession or control, were responsible for taking cleanup action at the chrome shop and zinc shop sites. Where such action is not being adequately taken, section 144.76(7)(a) permits DNR to take cleanup action, and section 144.76(7)(b) requires the person who was in possession or control to reimburse DNR for actual and necessary expenses in performing such cleanup action. No lien is created.

■ A trustee who conducts cleanup actions of hazardous wastes in connection with property of the bankruptcy estate is discharging a legal obligation of the estate. Where such actions preserve property, and the costs are reasonable and necessary, the costs may be recovered from such property to the extent that the holder of a claim secured by such property has been benefited. When such cleanup action is taken by EPA, or by DNR pursuant to section 144.-76(7)(a) of the Wisconsin Statutes, those

entities are standing in the shoes of the trustee in preserving the estate, and where their incurrence of such costs inures to the benefit of a secured creditor, it is appropriate to allow them to seek payment from the assets that are subject to the security interest. They should be entitled, as the trustee would under § 506(c) but for the abandonment, to recover their costs after sale of the property, prior to any other secured claims against the property.

■ At the present time, because of cleanup costs, the chrome shop and zinc shop properties are virtually unmarketable and without value. For practical purposes, if it is valued as provided in § 506(a) of the Code, the bank's claim with respect to these properties is an unsecured claim. The bank made it clear throughout these proceedings that it would not foreclose on its mortgages and make itself responsible for the cleanup costs. To the extent the properties may become marketable by the response actions of EPA or actions taken by DNR pursuant to section 144.76(7)(a), realization by the bank of the proceeds of sale of such properties, without reimbursement of the costs incurred by EPA and DNR, would constitute an unfair windfall to the bank.

In the case of *In re Mowbray Engineering Co., Inc.*, 67 B.R. at 35, the court said:

Here it appears that the estate has only nominal assets, far insufficient to accomplish the necessary cleanup. Any sale of the property must depend on the efforts of EPA to clean up the site. EPA stands in the shoes of the trustee in preserving the estate and is entitled, as the trustee would be but for abandonment, to recover costs upon sale of the property prior to satisfying any secured claims against the property.

The facts in this case present essentially the same issues as in *Mowbray* and *T.P. Long Chemical Inc.,* supra. The actions taken by those courts will be followed here. The trustee's request to abandon will be approved, provided that an order will be entered (1) giving EPA and DNR access to the two sites to carry out their statutory duties, and (2) giving to EPA for response costs, and to DNR for actions taken pursuant to section 144.76(7)(a) of the Wisconsin Statutes, administrative expense liens with priority over secured creditors to the proceeds of any sale of the property subsequent to decontamination.

## ORDER ON

(1) TRUSTEE'S MOTION TO ABANDON PROPERTY AND RESPONSES AND OBJECTIONS THERETO

(2) MOTION OF THE STATE OF WISCONSIN (DNR) FOR ORDER AUTHORIZING AND DIRECTING TRUSTEE TO USE COLLATERAL OF SECURED CREDITOR FOR CLEAN-UP OF HAZARDOUS WASTE

(3) MOTION OF JOHN D. LEWIS FOR ORDER AUTHORIZING AND DIRECTING TRUSTEE TO USE COLLATERAL OF SECURED CREDITOR FOR CLEAN-UP OF HAZARDOUS WASTE

The trustee seeks permission to abandon real estate belonging to the bankruptcy estate and leases pertaining to such real estate. Various objections or responses have been filed by the State of Wisconsin, the United States of America, John D. Lewis, and the University Bank of Green Bay, Wisconsin.

The State of Wisconsin has filed a motion asking that the trustee be ordered to pay for the sampling, transportation, treatment and/or disposal of all hazardous wastes stored in or on the debtor's property or formerly leased premises, and for remedial action directed toward the restoration of the environment and for disposal of all liquids and soils contaminated with hazardous substances. Since the trustee has virtually no funds, the State has asked that the trustee be authorized and directed to use the bank's collateral for that purpose, or the proceeds from the sale of such collateral. John D. Lewis has filed a similar motion regarding property which he owns in Kaukauna, Wisconsin.

With respect to the foregoing motions, objections and responses, the court has

filed a written decision together with Findings of Fact and Conclusions of Law. In accordance therewith,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. The motions of the State of Wisconsin Department of Natural Resources and of John D. Lewis for an order authorizing and directing the trustee to use the personal property that was sold to The Zinc Shop, Inc. on December 18, 1986, or the proceeds of such sale, all of which was subject to a properly perfected and valid security interest of the University Bank of Green Bay, Wisconsin, for the purpose of clean-up of hazardous wastes, are hereby denied.

2. All amounts that were escrowed following the December 18, 1986 sale and that are currently held by the bank, and any amounts realized in the future from such sale, are released to the bank free and clear of any claim by the DNR, U.S. EPA, or John D. Lewis.

3. The United States and the State of Wisconsin Department of Natural Resources are accorded super-priority liens, superior to any other lien or interest, as to the proceeds of any future sale by the debtor or debtor's estate, of the two parcels of real estate currently owned by the bankruptcy estate and referred to herein as the chrome shop and zinc shop properties, to the extent that the United States has incurred or does incur CERCLA response costs, and to the extent that the State of Wisconsin Department of Natural Resources has incurred or does incur actual, necessary, and reasonable costs in compliance with Section 144.76(7)(a) of the Wisconsin Statutes, at either and/or both said properties.

4. The United States' Environmental Protection Agency and the State of Wisconsin Department of Natural Resources are accorded access to both the aforereferenced parcels of real estate, at any reasonable time, in order for U.S. EPA to conduct any response activities it deems necessary or desirable, and in order for the DNR to conduct decontamination activities pursuant to applicable state statutes and regulations.

5. Subject to the liens imposed by the provisions of paragraph 3 and the access provisions contained in paragraph 4 above, the trustee's motion to abandon any and all interest that he has in the chrome shop and zinc shop properties together with the leases of the two properties is granted.

6. As used herein, "chrome shop" or "chrome shop property" refers to the debtor's chrome shop real property located at 519 Lande Street, De Pere, Wisconsin, the legal description for which is:

That part of Lot 167, Assessor's Subdivision of Nicolet, City of De Pere, Brown County, Wisconsin, lying South of Lande Street except that portion described as follows:

Beginning at the northwest corner of that part of said Lot lying south of Lande Street; thence S 81° 14' E along the south line of Lande Street 299.49 feet; thence S 19° 53' 30" W 253.68 feet; thence N 87° 25' W 239.69 feet; thence N 6° 13' E along the west line of said Lot 275.00 feet to the point of beginning. Containing 70,166 sq. ft.

7. As used herein, "zinc shop" or "zinc shop property" refers to the debtor's zinc shop real property located at 315 South Sixth Street, De Pere, Wisconsin, the legal description for which is:

The Northerly 42 feet of the Southerly 120 feet of the Westerly 131 feet of Lot 120, Plat of a Map of Assessor's Subdivision of lands in the City of Nicolet, now a part of the City of De Pere, West side of Fox River, Brown County, Wisconsin.

The South Thirty-three and two-thirds (33⅔) feet of Lot One Hundred Seventeen (117), and the North Sixty-five and one-third (65⅓) feet of the Lot One Hundred Twenty (120) all according to the recorded Plat of a Map of Assessor's Subdivision of Lands in the City of Nicolet, now a part of the City of De Pere, West side of Fox River, Brown County, Wisconsin.