In re H.F. RADANDT, INC., Debtor.

Bankruptcy No. 90–12157–7.

United States Bankruptcy Court,
W.D. Wisconsin.

Sept. 3, 1993.

Janette K. Brimmer, Asst. Atty. Gen., Madison, WI, for State of WI, DNR.

Randi L. Osberg, Eau Claire, WI, Trustee.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

This matter is before the Court on a motion by the State of Wisconsin, Department of Natural Resources (hereinafter: State) for allowance of a priority administrative expense claim pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1). The chapter 7 trustee, Randi L. Osberg, objected to the State's motion. The State is represented by Janette K. Brimmer and the trustee is representing himself.

The facts are as follows. The debtor, H.F. Radandt, Inc., filed a chapter 11 bankruptcy petition on August 3, 1990. The case was later converted to chapter 7 on May 21, 1991. Trustee Osberg conducted an auction of all of the debtor's personal property in July of 1991. A parcel of real estate was later sold to the City of Eau Claire and the accounts receivable were liquidated. The only remaining property in the bankruptcy estate was a piece of real estate located at 2324 Western Avenue in Eau Claire. The trustee sold this property at auction to the William J. Sentor Trust for $57,000. The sale was contingent, however, on the removal of underground fuel tanks and the conducting of satisfactory Phase I and Phase II environmental examinations at the State's expense.

The tanks were removed and two spill sites due to leaking tanks were discovered. Drums containing unknown chemicals were also observed; they would need to be tested and removed as well. Estimates of the cost of clean-up range from $50,000 to $100,000, a portion of which would be eligible for reimbursement under the Petroleum Environmental Cleanup Fund Act (PECFA).[1] Because of these developments, the trustee filed a motion to abandon the property on November 18, 1992. Although the State did not object to the trustee's motion to abandon, it did inform him that it intended to file a claim for administrative expense reimbursement for its future clean-up expenditures. On January 26, 1993, the State filed its motion for allowance of an administrative expense—the matter currently before the Court.

The trustee currently has on hand approximately $174,605.84. He believes that the State of Wisconsin, Department of Industry, Labor and Human Relations has a valid first priority lien pursuant to a warrant for approximately $115,000. He further believes that any other liens against the estate are voidable.

Given this fact scenario and the State's expressed intentions, the trustee withdrew his motion to abandon pending resolution of the State's motion for allowance of an administrative expense. The parties submitted briefs to the Court in support of their respective positions. A telephone conference was held on June 14, 1993, at which time the Court took the matter under advisement.

Initially, the Court notes that issues involving the treatment of environmental clean-up costs in bankruptcy have generated a tremendous amount of interest and commentary in recent years. *See, e.g.,* Rudi Grueneberg, *Clash of the Titans: United States Bankruptcy Code Versus Environmental Protection Legislation,* 2 J. of Bankr.L. & Prac. 3 (1993); Robert P. Simons, *Avoiding Liability for Contaminated Real Estate,* 1 J. of Bankr.L. & Prac. 382 (1992); Kevin J. Saville, *Discharging CERCLA Liability in Bankruptcy: When Does a Claim Arise?,* 76 Minn.L.Rev. 327 (1991); Jill Thompson Losch, *Bankruptcy v. Environmental Obligations: Clash of the Titans,* 52 La.L.Rev. 137 (1991); Daniel Klerman, Comment, *Earth First? CERCLA Reimbursement Claims and Bankruptcy,* 58 U.Chi.L.Rev. 795 (1991).

The statutory provision under which the trustee would ultimately like to proceed is § 554 of the Bankruptcy Code. That provision provides in relevant part that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." *See* 11 U.S.C. § 554(a) (West 1993).

The State's motion is made pursuant to §§ 503 and 507 of the Bankruptcy Code. § 503 provides in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

*See* 11 U.S.C. § 503(b)(1)(A) (West 1993). § 507 provides in relevant part:

(a) The following expenses and claims have priority in the following order:

---

1. *See* WIS.STAT.ANN. § 101.143 (West Supp. 1992).

(1) First, administrative expenses allowed under section 503(b) of this title....

*See* 11 U.S.C. § 507(a)(1) (West 1993). It is on the basis of these statutory provisions that the State alleges that its anticipated clean-up costs are entitled to administrative priority.

A seminal case which addresses some of the issues involved here is *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Both parties discussed this case in their briefs submitted to the Court. In *Midlantic*, the Supreme Court held that a trustee in bankruptcy may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards. 474 U.S. at 507, 106 S.Ct. at 762. The court limited this broad holding, however, in a footnote in which it stated:

> This exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Midlantic*, 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9.

This footnote has engendered a great deal of controversy among courts which have subsequently sought to apply the vague "imminent and identifiable harm" standard. *See generally* John E. Theuman, Annotation, *Right and Power of Trustee in Bankruptcy or Debtor in Possession to Abandon, Under 11 USCS § 554(a), Property Which is "Burdensome" Because of Existence of Environmental Conditions Requiring Cleanup—Midlantic and Its Progeny*, 103 A.L.R.Fed. 73 (1991).

The trustee in his brief reviews a substantial number of cases which interpret and apply *Midlantic*'s rationale. Reduced to its essentials, the trustee's argument is that the State has made no showing that "imminent and identifiable harm" exists in this case. The trustee further asserts that allowing abandonment here will not aggravate existing dangers as it would have done under the facts in *Midlantic*.[2] While acknowledging the existence of unencumbered assets in the estate, the trustee argues for a narrow construction of *Midlantic*'s holding and for allowing abandonment in this case.

Addressing the issue of the status of any ultimate claim by the State, the trustee again reviews a fairly large number of cases with divergent holdings on this question. After doing so, the trustee posits a solution to the matter which in his terms would constitute a "reasonable compromise"—having the Court order a § 506(c) lien in favor of the State placed on the property as a condition to abandonment. Later in his brief, the trustee proposes an additional alternative solution—granting the State an administrative claim for its clean-up costs, but assigning that claim a lesser priority than other chapter 7 administrative expenses, including the trustee's own fees, expenses and attorney fees. Either of these solutions would, the trustee contends, strike a proper balance between maintaining some incentive for bankruptcy trustees to actively pursue estate property on the one hand and providing at least some heightened possibility of compensation to state entities for clean-up costs on the other.

Turning to the State's argument, it begins by citing various state and federal statutory provisions which allegedly obligate the trustee to clean up the property or reimburse any entity that does so. One of the statutes is 28 U.S.C. § 959(b) which provides:

> [a] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee,

---

**2.** The Supreme Court in *Midlantic* noted that, upon abandonment, the trustee in that case removed the 24–hour guard service and shut down the fire suppression system at one of the contaminated sites. The Court stated specifically that "[t]he trustee's abandonment at both sites aggravated already existing dangers by halting security measures that prevented public entry, vandalism, and fire." 474 U.S. at 499 n. 3, 106 S.Ct. at 758 n. 3.

receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

*See* 28 U.S.C. § 959 (West Supp.1993). This provision was cited by the Supreme Court in support of its result in the aforementioned *Midlantic* decision. *See Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 505, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986). The State then cites numerous cases for the proposition that post-petition clean-up costs expended by a governmental entity are recoverable as an administrative expense. *See In re Chateaugay Corp.,* 944 F.2d 997, 1009–10 (2nd Cir.1991); *In re Smith–Douglass, Inc.,* 856 F.2d 12, 17 (4th Cir.1988); *Lancaster v. Tennessee Dept. of Health and Environment (In re Wall Tube & Metal Products Co.),* 831 F.2d 118, 123 (6th Cir.1987); *In re Better–Brite Plating, Inc.,* 105 B.R. 912, 916 (Bankr.E.D.Wis. 1989) (citing numerous cases), *vacated on other grounds,* 136 B.R. 526 (Bankr.E.D.Wis. 1990).

The State next contends that it is not necessary to confer a benefit to the estate in order to warrant allowance of an administrative expense for environmental clean-up costs. In support it cites *Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.),* 963 F.2d 1449 (11th Cir. 1992); *In re Wall Tube & Metal Products Co.,* 831 F.2d 118 (6th Cir.1987); *In re Bill's Coal Co.,* 124 B.R. 827 (D.Kan.1991). The fact that funds have not yet been expended should not preclude their allowance as an administrative expense, argues the State, since the amount necessary is reasonably estimable and since there is no doubt that it will have to be expended.

An additional fact frequently emphasized by the State in its briefs is the presence of unencumbered funds in the debtor's estate. It states at one point that "[i]t is especially outrageous that the assets could be distributed with no regard to future clean-up costs when there are sufficient funds to cover such costs now." Although the State attempts to argue in its reply brief that the harm here is

imminent, it conceded during the telephone conference with the Court that it was not imminent in the sense that emergency measures would be necessary. The State in effect argues for a broad interpretation of the *Midlantic* rationale—especially in cases such as this one where there are unencumbered assets. Other courts have held that where such assets are present, stricter compliance with state environmental laws should be required. *See, e.g., In re Smith–Douglass, Inc.,* 856 F.2d 12, 17 (4th Cir.1988). Finally, the State concludes that allowing it a priority administrative expense, or at a minimum granting it a priority lien against the property, would strike a proper balance between "[i]mportant competing bankruptcy and environmental concerns."

The Court has considered at length the wealth of judicial precedent and the arguments and policy considerations submitted by the parties. The Court notes that the issue raised in this case—the treatment of environmental clean-up costs in bankruptcy—is one of the most important and frequently recurring issues facing the nation's bankruptcy courts today. The plethora of articles and cases addressing this issue—a small sampling of which has already been mentioned—testifies to this fact. The Court is sympathetic to the dilemma faced by trustees in determining how to proceed in cases such as this.

Having carefully considered the facts before it, the Court has concluded that allowing the State an administrative expense for its future clean-up costs is not warranted. Nor would it be proper to grant the State a priority lien against the property—the "compromise" position proposed by both parties. Numerous reasons support this result.

■ First, allowing administrative expense status for clean-up costs which have not yet been incurred would in effect constitute an advisory opinion. This Court does not issue advisory opinions. In a sense, then, the State's motion is not ripe for a judicial determination. Other Courts faced with similar facts have held likewise. *See, e.g., In re Shore Co.,* 134 B.R. 572, 579–80 (Bankr. E.D.Tex.1991); *In re Microfab, Inc.,* 105

B.R. 161, 166 (Bankr.D.Mass.1989). As noted by the *Microfab* court,

> [B]ankruptcy Courts typically, at the· end of a case, rule on and allow administrative expenses only after those expenses have been incurred. To do otherwise would be tantamount to issuing an advisory opinion. Section 503(b)(1)(A) of the Bankruptcy Code contains the rationale for this practice: administrative expenses must be both "actual" and "necessary." If the Court were to rule on administrative expenses before they were incurred, the Court could not be certain that the claimant would actually incur the expenses for which it seeks advance payment, nor could it be certain that the expenses eventually incurred would be necessary. Moreover, the Court cannot determine until the end of the case whether all administrative expenses can be paid in full or whether (because the total funds in the estate are less than the total amount of allowed administrative claims) only a pro-rata distribution to administrative expense claimants can be made. I see no reason in this case to diverge from the practice of ruling on administrative expense claims only after they have been incurred and only at the end of the case.

*In re Microfab, Inc.,* 105 B.R. at 170.

■ Second, based on the facts presented, it is very possible that the clean-up costs could exceed the contingent sale price of the property of $57,000. The trustee further stresses in his brief that the clean-up costs would most likely exhaust the unencumbered assets in the bankruptcy estate with little or no resulting benefit to the estate. Under the circumstances, this Court will not require the trustee to exhaust the bankruptcy estate in attempting to remedy or partially remedy the environmental contamination. Other courts have reached the same result under similar circumstances. *See, e.g., In re Shore Co.,* 134 B.R. 572, 580 (Bankr.E.D.Tex.1991); *In re Microfab, Inc.,* 105 B.R. 161, 169–70 (Bankr.D.Mass.1989); *In re Franklin Signal Corp.,* 65 B.R. 268, 274 (Bankr.D.Minn.1986).

■ Third, allowing an administrative expense would be unwarranted given § 503's mandate that such expenses be granted where necessary to "preserve" the estate. *See* 11 U.S.C. § 503(b)(1)(A) (West 1993). The State's motion is not about "preserving" the estate, nor would such preservation be accomplished by granting it. The trustee has already expressed his intention to abandon the property, having determined that it was burdensome or of inconsequential value or benefit to the estate. *See* 11 U.S.C. § 554(a) (West 1993). As noted by the trustee, a dissenting judge in one of the lower court decisions of the *Midlantic* case opined that "[t]he suggestion that the cleanup costs might be classified as a 'preservation expense' of a property is preposterous." *See City of New York v. Quanta Resources Corp. (In re Quanta Resources Corp.),* 739 F.2d 912, 926 (3rd Cir.1984) (Gibbons, J., dissenting), *aff'd, Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

■ Fourth and most importantly, absent clear statutory authority to do so, the Court refuses to fashion a remedy in this matter by granting the State a priority lien on the property. As noted, both parties proposed this remedy as a type of compromise solution. The Court acknowledges and is aware of the compelling issues and ramifications involved with instances of environmental contamination. In this regard the Court aligns itself closely with the persuasive reasoning in the aforementioned case of *In re Shore Co.,* 134 B.R. 572 (Bankr.E.D.Tex.1991). That case involved contaminated oil refinery property in Texas which the trustee sought to abandon in the debtor-owner's bankruptcy. Similar to the present case, there were unencumbered assets in the bankruptcy estate at issue in *Shore.* Also similar to the present case, no funds had yet been expended for the clean-up of the refinery property. After reviewing the various approaches taken by courts which have applied *Midlantic*'s rationale, the *Shore* court refused to fashion a remedy to employ the unencumbered assets of the estate to clean up the property. *Shore,* 134 B.R. at 579. The court gave two principal reasons for its refusal to do so. First, as already cited by this Court, to grant administrative expense status would have been premature, since no funds had yet been

expended for the clean-up. 134 B.R. at 579–80. Second, the *Shore* court stressed that there had been no showing of imminent or identifiable danger as required by *Midlantic. Id.* at 578. The court cited the inaction of the state agency responsible for clean-up of environmental contamination as evidence that the danger was not imminent. *Id.* at 579.

■ Very similar to *Shore,* there has been no showing of imminent danger here either. As noted by the trustee, John Grump of the Wisconsin Department of Natural Resources (DNR) stated in his affidavit submitted to the Court that "[w]hile the Property contamination does not currently call for any emergency health and safety measures, it must ultimately be cleaned...." *See Affidavit of John Grump* at 1–2. Nor has the DNR taken any remedial action to clean up the property. Like the *Shore* court, this Court finds the inaction of the DNR to be persuasive evidence of the absence of imminent danger here as well. In the absence of such a showing, the Court will not fashion its own remedy to address the contamination. There is simply no clear authority in the Bankruptcy Code to do so. Although *Midlantic*'s rationale could be relied upon to do so, the Court refuses to interpret that decision expansively. Although the significance of the fact that unencumbered funds are present in the estate involved here is not lost on the Court, it nevertheless believes it to be neither permissible nor advisable for the Court to fashion its own remedy as to those funds. *See Shore,* 134 B.R. at 579–580.

Environmental contamination is without question a compelling concern. The Court nevertheless believes it is for Congress, not the courts, to address and resolve the apparent conflict and confusion between state environmental laws, *Midlantic* and its progeny, and the dictates of the Bankruptcy Code.

Finally, the Court finds that it is permissible under the circumstances for the trustee to abandon this property pursuant to 11 U.S.C. § 554(a). Although that issue is technically no longer before the Court,[3] the Court

anticipates the renewal of the motion by the trustee given the result reached here.

Accordingly, the State's motion for allowance of an administrative expense is denied; the trustee's motion to abandon the property at issue is granted.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

**3.** As noted, the trustee withdrew his motion to abandon pending resolution of the State's mo-

