**In re Frank D. CONROY and Rosemary P. Conroy, Debtors.**

**Bankruptcy No. 90–3298–BM.**
**Motion Nos. 92–1271M, 92–2223M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 18, 1992.

Gregory M. Devine, Davis Reilly, P.C., Pittsburgh, Pa., for debtors.

Edward S. Stokan, Com. of Pa. Dept. of Environmental Resources, Pittsburgh, Pa., Office of U.S. Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Commonwealth of Pennsylvania, Department of Environmental Resources ("DER"), has filed a proof of claim and has requested payment of $113,622.00 as an administrative expense for costs incurred in cleaning up hazardous chemical substances at Cello Print, Inc.

Debtors have objected to the proof of claim and to the request for payment. They maintain that DER's claim does not qualify as an administrative expense but is, at best, a general unsecured claim. In addition, debtors contend that the claim is time-barred because it was filed long after the bar date for filing claims had passed and that DER consequently is entitled to nothing.

Debtors' objection to the proof of claim shall be overruled. DER's request will be granted, but not in the full amount sought. DER shall receive a total of $103,293.00, rather than $113,622.00, as an administrative expense. The remaining portion of its claim—i.e., $10,329.—will be disallowed.

## I

## FACTS

Cello Print, Inc. was in the printing business. It was situated in a two-story building located in White Oak Borough, Pennsylvania. The building was owned by Cello Print. Debtor Frank Conroy was CEO of Cello Print.

Cello Print is a wholly-owned subsidiary of Roy Wood, Inc. Debtor Frank Conroy owns one hundred percent (100%) of the stock of Roy Wood, Inc. and is its President. Neither corporation maintains appropriate books and records. The shareholder, directors and/or officers hold no corporate meetings.

Cello Print ceased operations altogether and abandoned the site at which it was located some time in 1990 when debtor Frank Conroy became gravely ill. Drums and canisters containing chemicals and solvents used in the printing business were left in the building when operations were ceased.

On July 19, 1990, the Manager of White Oak Borough notified DER that drums containing unidentified chemical substances were being stored at Cello Print. DER inspected the site the next day and found drums and canisters with labels on them indicating that they contained chemicals. Several of the drums had been sitting in water and were rusted on the bottom. The roof of the building leaked.

On July 23, 1990, debtor Frank Conroy was sent a Notice Of Violation by DER which informed him that the situation at Cello Print was in violation of the Pennsylvania Solid Waste Management Act. Debtor was also informed that the facility would be inspected again and was directed to arrange for proper disposal of the hazardous waste within thirty (30) days. When no action was taken pursuant to the Notice of Violation, a formal Field Compliance Order directing debtor Frank Conroy to remove all hazardous wastes by October 3, 1990 was issued by DER on September 14, 1990. No appeal of this order was taken.

DER inspected the facility again on October 4, 1990 and found that the violations specified in the compliance order had not been abated. The matter was then referred to DER's Hazardous Sites Cleanup Program with a request that a prompt interim response be conducted to abate the

release or threatened release of hazardous substances.

Debtors filed a voluntary chapter 11 petition on October 23, 1990. DER was not listed as a creditor and was not on the mailing matrix and thus did not receive formal notice of the bankruptcy filing. The stock of Roy Wood, Inc. owned by debtor Frank Conroy was listed on one of the schedules.

On December 11, 1990, a document entitled "HSCA Response Justification Document" was issued by DER. It determined that an actual or potential threat to the environment existed and that a prompt interim response was justified.

A prompt interim response to secure the building and the containers, to conduct further investigation, and to remove the containers from the site was authorized by DER's Deputy Secretary on December 31, 1990.

On January 11, 1991, DER obtained a court order directing debtor Frank Conroy to provide DER with access to Cello Print's facility so that DER might conduct a prompt interim response.

Cleanup of the site commenced on March 6, 1991. The work was performed by E & E, Inc. a private contractor retained by DER. The total cost of the cleanup is $103,293.00. To date, DER has spent $74,211.73 to alleviate the problem. An additional $29,081.27 will be spent to remove the hazardous waste from the site and to dispose of it. The remaining work is to be done within the next month or so.

At some unspecified date after the bankruptcy filing, DER learned of this filing and, on March 3, 1992, DER filed a proof of claim for costs incurred in ameliorating the problem at Cello Print. On March 5, 1992, DER filed a request for payment as an administrative expense.

Debtors objected on April 14, 1992 to DER's proof of claim.

A hearing was held on DER's proof of claim and request for payment and debtors' objection thereto on August 19, 1992.

## II

## ANALYSIS

11 U.S.C. § 503(b) provides as follows:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

A claim is entitled to administrative priority status only if it comports with the language and underlying purpose of Section 503. *See In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984). The terms "actual" and "necessary" in this context must be strictly construed. *See In re Neidig*, 117 B.R. 625, 631 (Bankr.D.Colo.1990).

A claim is to be accorded administrative priority status only if the debt in question: (1) arises from a transaction with the debtor (or trustee); (2) which benefitted the estate postpetition. *See In re Jartran, Inc.*, 732 F.2d at 589.

In order for an expenditure to qualify as "actual" and "necessary", it must benefit the estate as a whole, not just the creditor/claimant. *See In re Jartran, Inc.*, 886 F.2d 859, 871 (7th Cir.1989). The benefit accruing to the estate must be actual, as opposed to potential, in order for the expenditure to qualify as an administrative expense. *See In re Subscription Television of Greater Atlanta*, 789 F.2d 1530, 1532 (11th Cir.1986).

DER maintains that the costs incurred in remediating the release and/or threatened release of hazardous chemicals at Cello Print are entitled to administrative priority status pursuant to 11 U.S.C. § 503(b)(1)(A).

Debtors object to payment of DER's proof of claim as an administrative expense on several grounds.

As has been noted, DER incurred costs postpetition to remediate a release of hazardous chemicals which occurred prepetition. According to debtors, costs expended *post*petition to remediate a *pre*petition re-

**970**

lease of hazardous substances cannot, as a matter of law, qualify as an administrative expense.

■ This contention is without merit. Costs incurred postpetition to clean up a site owned by a debtor where there has been a prepetition release or threatened release of hazardous substances *may* be entitled to administrative priority. *See In re Chateaugay Corp.,* 944 F.2d 997, 1009–10 (2d Cir.1991); *also Lancaster v. State of Tennessee (In re Wall Tube & Metal Products Co.),* 831 F.2d 118, 123–24 (6th Cir. 1987).

Debtors cite to *Southern Railway Co. v. Johnson Bronze Co. (In re Johnson Bronze Co.),* 758 F.2d 137 (3d Cir.1985) and to *In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988) in support of their position. Their reliance upon these cases is misguided because they are distinguishable from the present case in a critical respect. As shall be seen, the site cleaned up by DER in the present case qualifies as property of debtors' bankruptcy estate. In contrast, the sites cleaned up in *Johnson Bronze* and *Dant & Russell* were *not* property of the bankruptcy estates.

The site which was cleaned up in *Johnson Bronze* was a drainage ditch located on adjacent property *belonging to Southern Railway* which debtor had a license to use. The license required debtor to maintain the ditch, to restore it to its original condition, and to indemnify Southern for any liability arising from its use. 758 F.2d at 139. Southern sought to recover as an administrative expense its costs incurred in cleaning up hazardous wastes deposited in the ditch prepetition by debtor pursuant to the license. 758 F.2d at 140.

The site which was cleaned up in *Dant & Russell* had been occupied by debtor pursuant to an unauthorized postpetition lease and an earlier lease in effect at the time the bankruptcy was filed. Both leases contained provisions requiring debtor to comply with environmental laws and regulations and requiring debtor to indemnify the lessor for costs incurred by it because of violations of such laws and regulations. 853 F.2d at 702. Burlington Northern Railway, lessor of the site, sought to recover as an administrative expense costs it would have to incur in cleaning up the hazardous wastes left on the site by debtor prior to the filing of the bankruptcy petition. 853 F.2d at 708.

Had the sites at issue in *Johnson Bronze* and *Dant & Russell* been property of the bankruptcy estate, the outcome in those cases would have been different. *See In re Dant & Russell,* 853 F.2d at 709. The parties ultimately responsible for remediating the prepetition release of hazardous wastes at those sites would have been entitled to recover their cleanup costs as an administrative expense. *See Matter of Kent Holland Die Casting & Plating, Inc.,* 125 B.R. 493, 500–01 (Bankr. W.D.Mich.1991).

Debtors also argue that costs incurred by DER in this instance do not qualify as an administrative expense because the remediation undertaken did not benefit or preserve property of the bankruptcy estate. According to debtors, Cello Print is not property of the bankruptcy estate.

■ This contention is also without merit. The site which was remediated by DER qualifies as property of the bankruptcy estate, which includes all legal or equitable interests of debtors in property as of commencement of their case on October 23, 1990. *See* 11 U.S.C. § 541(a)(1).

Debtor Frank Conroy was the sole shareholder and the President of Roy Wood, Inc. and Cello Print was a wholly-owned subsidiary of Roy Wood, Inc. The building in which the hazardous materials were located is owned by Cello Print. It follows from the above that debtor Frank Conroy had a "legal or equitable interest" in Cello Print, Inc. as of the filing date by virtue of the fact that Cello Print is a wholly-owned subsidiary of a corporation of which he is the sole owner and principal.

■ Furthermore, the remediation undertaken by DER was necessary to the preservation of the bankruptcy estate and conferred an actual postpetition benefit upon it.

Debtor Frank Conroy qualified under state law as the "owner" or "operator" of a site at which hazardous substances were located by virtue of the fact that he was President of Cello Print and thus was in control of its operations. *See* 35 P.S. § 6020.103 (Purdon's Supp.1992). As such, he was a "responsible person" with respect to the release of hazardous substances. *Id.* Accordingly, he was "strictly liable" to DER for response costs incurred by DER in correcting the problem. *See* 35 P.S. § 6020.507(a) (Purdon's Supp.1992).

Debtor Frank Conroy was obligated by law to remediate the hazardous waste problem at Cello Print. Had he done so, the costs incurred ultimately would have been borne by the bankruptcy estate. When he refused and/or failed to do so, DER intervened in accordance with the law and undertook to do so. The bankruptcy estate thereby was benefitted to the extent that action which was required under the law— i.e., remediation—was performed on its behalf by another party. The fact that the costs of remediation are to be paid for out of estate assets and are to be treated as an administrative expense is not relevant to whether those expenditures benefitted the estate as a whole. The bankruptcy estate has been "benefitted" in that a problem in need of a resolution has been resolved. Furthermore, the "estate" benefitted in that the risk of further damage resulting from this escalating harm has been abated.

It remains to be determined whether the full amount of DER's claim is allowable as an administrative expense.

DER has spent the sum of $74,211.73 to date in alleviating the problem and will spend an additional $29,081.27 to remove the hazardous wastes from the site and to dispose of them in the next month or so.

The total cost for remediation activities undertaken to date and which will be undertaken in the near future is $103,293.00. The above analysis indicates that these costs are necessary to the preservation of the bankruptcy estate as a whole. As no credible challenge to the numbers has been offered and as their status has been deter-

mined, they are entitled to administrative priority status.

■ In addition to seeking to recover these costs as an administrative expense, DER also seeks to recover $10,329.20 pursuant to 35 P.S. § 6020.507(b) (Purdon's Supp.1992), which provides as follows:

*Amount.* In an action to recover response costs ..., [DER] shall include administrative and legal costs incurred from its initial investigation up to the time that it recovers its costs. The amount attributable to administrative and legal costs shall be 10% of the amount paid for the response action or the actual costs, whichever is greater.

The burden in this instance is upon DER of proving, by a preponderance of the evidence, that its claim is entitled to administrative priority status. *See In re Englewood Community Hospital Corp.,* 117 B.R. 352, 358 (Bankr.N.D.Ill.1990).

The additional 10 percent (10%) above and beyond the actual cost of remediating the problem at Cello Print appears to be in the nature of an arbitrary surcharge. This additional amount does not appear to be "actual" expenditure. Moreover, DER has not demonstrated to the court's satisfaction that this surcharge was "necessary" for the preservation of the bankruptcy estate. It is not self-evident to the court that it was "necessary" in this regard. Accordingly, this portion of DER's claim—i.e., $10,329.30—will be disallowed.

DER's claim will be allowed as an administrative expense in the amount of $103,293.00.

■ One final matter remains to be addressed in this Memorandum Opinion. An administrative order establishing a claims bar date was issued on December 12, 1990. The order provided in pertinent part as follows:

You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. Sec. 1111 & Bankruptcy Rule 3003.

Bar date is April 3, 1991.

DER did not file its proof of claim until March 3, 1992, some eleven (11) months *after* the above bar date.

Debtors submit that DER's claim is at best a general unsecured claim and that it therefore should be disallowed in its entirety because it was filed with the court long after the claims bar date.

Debtors' contention is both disingenuous and completely lacking in merit.

The petition filed by debtors ostensibly scheduled all creditors having claims. Curiously, debtors failed to schedule DER as a claimant. As a consequence, DER was not informed of the bankruptcy and did not receive any of the notices issued by the court, including the notice containing the above bar date. The DER learned of the bankruptcy filing and the bar date only after that bar date had expired. It is disingenuous of debtors to determine that DER should not be scheduled and therefore need not receive appropriate notices and thereafter to argue that DER's claim should be disallowed because it was filed after the bar date had passed.

 Moreover, it already has been determined that DER's claim qualifies as an administrative expense and is not, as debtors insist, merely a general unsecured claim. The bar date of April 3, 1991, which was established in the order issued on December 12, 1990, did *not* apply to administrative claims. *See In re Hudson Oil Co.,* 100 B.R. 72, 76 (Bankr.D.Kan.1989).

A bar date for administrative claims in a chapter 11 case is not set unless and until a debtor's plan of reorganization has been confirmed. It is the practice of this court to issue such a post-confirmation order when the order confirming the plan is issued. Administrative claimants have forty-five (45) days to file their claims.

DER's administrative claim is *not* time-barred because no post-confirmation order setting a bar date for such claims has been issued in this case.

An appropriate order shall be issued.

## ORDER OF COURT

AND NOW at Pittsburgh this 18th day of September, 1992, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that debtors' objection to the proof of claim of the Commonwealth of Pennsylvania, Department of Environmental Resources, and to its request for payment as an administrative expense is OVERRULED.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that said proof of claim is ALLOWED in the amount of $103,293.00 as an administrative expense.