In re Frank D. CONROY and Rosemary P. Conroy, Debtors,

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellant,

v.

Frank D. CONROY and Rosemary P. Conroy, Appellees.

In re Frank D. CONROY and Rosemary P. Conroy, Debtors,

Frank D. CONROY and Rosemary P. Conroy, Appellants,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellee.

Civ. A. Nos. 93–10, 93–11.

United States District Court, W.D. Pennsylvania.

May 12, 1993.

Reed J. Davis and Gregory M. Devine, Pittsburgh, PA, for Frank and Rosemary Conroy.

Edward S. Stokan, Commonwealth of Pennsylvania Dept. of Environmental Resources, Pittsburgh, PA, for Pennsylvania Dept. of Environmental Resources.

Stephen I. Goldring, Pittsburgh, PA, Trustee.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court are two consolidated appeals from an order entered in bankruptcy court by Judge Bernard Markovitz.

In reviewing this bankruptcy order, this Court may set aside findings of fact if they are clearly erroneous. *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983). All questions of law are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir. 1988).

After a review of the record, this Court affirms the following facts:

These consolidated appeals stem from the action of Cello Print, Inc. (Cello Print), a printing business, which is a wholly-owned subsidiary of Roy Wood, Inc. Debtor Frank Conroy owns 100 percent of the stock of Roy Wood, Inc., and is its president.

In 1990, Cello Print ceased operations altogether and abandoned the site at which it was located. Drums and canisters containing chemicals and solvents used in the printing business were left in the building when operations were ceased.

On July 19, 1990, the manager of White Oak Borough notified the Pennsylvania Department of Environmental Resources (DER) that drums containing unidentified chemical substances were being stored at Cello Print. DER inspected the site and found the drums and canisters. Several of the drums had been sitting in water and were rusted on the bottom.

On July 23, 1990, debtor Frank Conroy was sent a notice of violation by DER which informed him that the situation at Cello Print was in violation of the Pennsylvania Solid Waste Management Act. Debtor was directed to arrange for proper disposal of the hazardous waste within 30 days. When no action was taken by debtor, a formal field compliance order directing debtor to remove all hazardous wastes by October 3, 1990, was issued by DER on September 14, 1990. No appeal of this order was taken.

DER inspected the facility on October 4, 1990, and found that the violations had not been abated. The matter was then referred to DER's Hazardous Sites Clean Up Program with directions that clean up be conducted by DER.

Debtors filed a voluntary Chapter 11 petition on October 23, 1990. DER was not listed as a creditor and did not receive formal notice of the bankruptcy filing. The stock of Roy Wood, Inc., owned by debtor Frank Conroy, was listed on one of the schedules.

After release of an "HSCA Response Justification Document," on December 31, 1990, DER authorized a prompt interim response to secure the building and the containers and to conduct further investigations. On January 11, 1991, DER obtained a court order directing debtor Frank Conroy to provide DER with access to Cello Print's facilities so that DER might conduct a prompt interim response.

Clean up of the site commenced on March 6, 1991. The work was performed by a private contractor retained by DER. The total costs of the clean up is $103,293.

DER learned of the bankruptcy filing and, on March 3, 1992, filed a proof of claim for costs incurred in ameliorating the problem at Cello Print. On March 5, 1992, DER filed a request for payment as an administrative expense, including the $103,293 in contracting costs and an additional 10 percent in administrative and legal costs pursuant to Pennsylvania statute.

On September 18, 1992, Judge Markovitz ruled on debtors' objection to DER's proof of claim. By memorandum opinion and order, 144 B.R. 966, Judge Markovitz found that DER is entitled to recover the contracting costs as an administrative expense. However, Judge Markovitz disallowed DER's claim for the 10 percent additional costs for administrative and legal expenses. Debtors have appealed the finding that DER is entitled to the contracting costs. DER has appealed the finding that DER is not entitled to the additional administrative and legal costs.

## I. Classification of the claim

In *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), the Supreme Court held that a clean up order acquired by the State of Ohio against a property owner was an obligation to pay money that was dischargeable in bankruptcy. *Kovacs*, 469 U.S. at 278–83, 105 S.Ct. at 707–10. However, the Court explicitly left open the question of "what the legal consequences would have been had [the debtor] taken bankruptcy before a receiver had been appointed and a trustee had been designated with the usual duties of a bankruptcy trustee." *Id.* at 284, 105 S.Ct. at 710. Specifically, the *Kovacs* Court pondered the effect of a hypothetical trustee's determination of the value of the property as compared to the clean up costs and the resulting decision to either sell the property for more than those costs and pay off the clean up obligation or to abandon the property as burdensome to the estate under 11 U.S.C. § 554(a), whereby the prior owner would have to comply with the state environmental law. *Kovacs*, 469 U.S. at 284 n. 12, 105 S.Ct. at 710 n. 12.

In reliance upon this rumination, the Third Circuit in *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137 (3d Cir.1985), held that the purchaser of debtor's property which had attached environmental clean up costs, had no claim against debtor's estate, administrative or otherwise, because the debtor in possession of the property had made the calculation outlined in footnote 12 of *Kovacs* and "opted to sell." *Johnson Bronze*, 758 F.2d at 143.

One year after the Third Circuit held that a purchaser has no claim for clean up costs against the previous owner's estate, the Supreme Court ruled on the remaining question from footnote 12 of *Kovacs* regarding abandonment of the property. *See Midlantic National Bank v. New Jersey Department of E.P.*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). The Court stated:

[W]e conclude that Congress did not intend for § 554(a) to pre-empt all state and local laws. The Bankruptcy Code does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety. Accordingly, ... we hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards.

*Midlantic*, 474 U.S. at 507, 106 S.Ct. at 762.

The Third Circuit's holding in *Johnson Bronze* has no bearing on the instant case. In the instant case, debtors are the owner of the property with attached pollution clean up costs and this property is part of debtors' estate. As such, the instant case does not present a *Johnson Bronze* scenario wherein the debtor in possession has "opted to sell" the polluted property.

*Kovacs* and *Johnson Bronze* are significant in that they involved assertions of administrative expense priority by a lessor for clean up costs resulting from the property not owned by the bankrupt-

cy estate. Quite a different result, however, is warranted when the clean up costs result from monies expended for the preservation of the bankruptcy estate. Such a result comports with the plain language of 11 U.S.C. § 503(b)(1)(A), which directs that administrative expenses are allowed for "the actual, necessary costs and expenses of preserving the estate...." When a claimant expends funds that preserve the estate, treatment as an administrative expense is authorized by the Bankruptcy Code.

*In re Dante & Russell, Inc.*, 853 F.2d 700, 709 (9th Cir.1988) (citing cases).

Instead of *Johnson Bronze*, the Supreme Court's holding in *Midlantic* controls the instant case.

> [T]he Supreme Court's decision in *Midlantic*, ... ruled that a bankruptcy trustee could not abandon property in contravention of state or local laws designed to protect public health or safety. If property on which toxic substances pose a significant hazard to public health cannot be abandoned, it must follow ... that expenses to remove the threat posed by such substances are necessary to preserve the estate.

*In re Chateaugay Corp.*, 944 F.2d 997, 1010 (2d Cir.1991). *See also In re Wall Tube & Metal Products Co.*, 831 F.2d 118, 123–24 (6th Cir.1987); *In re Bio–Med Laboratories*, 131 B.R. 72, 75 (Bankr.N.D.Oh. 1991) (rent due as holdover tenant while doing environmental clean up classified as administrative expense); *Matter of Kent Holland Die Casting & Plating, Inc.*, 125 B.R. 493, 500 (Bankr.W.D.Mich.1991); *In re Peerless Plating Co.*, 70 B.R. 943, 948–49 (Bankr.W.D.Mich.1987); *In re Stevens*, 68 B.R. 774, 783 (D.Me.1987).

This Court will affirm Judge Markovitz's finding that the environmental clean up costs were necessary to preserve the estate and, therefore, are administrative expenses under 11 U.S.C. § 503(b)(1)(A).

Debtors argue on behalf of the unsecured creditors against the classification of the clean up costs as an administrative expense. "Ultimately, it is the Conroy unsecured creditors under either a Chapter 11 or a Chapter 7 scenario that bear the burden of the bankruptcy court's decision because it is their money that would have been paid under a confirmed plan or a liquidation that the DER will receive due to the granting of preferred status to the DER claim." (Brief for appellants (Civil Action No. 93–11), at 12–13). This argument is irrelevant. As aptly stated by Judge Markovitz:

> Debtor Frank Conroy was obligated by law to remediate the hazardous waste problem at Cello Print. Had he done so, the costs incurred ultimately would have been borne by the bankruptcy estate. When he refused and/or failed to do so, DER intervened in accordance with the law and undertook to do so. The bankruptcy estate thereby was benefitted to the extent that action which was required under the law—i.e., remediation— was performed on its behalf by another party. The fact that the costs of remediation are to be paid for out of estate assets and are to be treated as an administrative expense is not relevant to whether those expenditures benefit the estate as a whole. The bankruptcy estate has been "benefitted" in that a problem in need of resolution has been resolved. Furthermore, the "estate" benefitted in that the risk of further damage resulting from the escalating harm has been abated.

144 B.R. at 971. *See also In re Wall Tube*, 831 F.2d at 123 ("Existing creditors are, to be sure, in a dilemma not of their own making; but there is no obvious reason why they should be allowed to escape that dilemma at the risk of imposing it on others equally innocent. Indeed, the protection of innocent creditors would not be furthered by a contrary holding that permits creditors to benefit from their silence while the debtor violates the law.").

## II. The amount of clean up expense

At Civil Action No. 93–11, debtors object to the bankruptcy court's finding that DER is entitled to $103,293 in administrative costs for clean up. At Civil Action No. 93–10, DER objects to the bankruptcy court's

finding that DER is not entitled to an additional $10,329.30 as administrative and legal costs. Each of these appeals will be addressed below.

### A. Civil Action No. 93–11

■ Title 11 U.S.C. § 503(b)(1)(A) provides that recognized administrative claims are limited to "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b). The debtors have objected to the bankruptcy court's finding that the total costs for remediation activities undertaken to preserve the estate is $103,293. Debtors assert that these costs do not represent actual costs and expenses to remove the chemicals. (Brief for appellants (Civil Action No. 93–11) at 13). Specifically, debtors contend that DER failed to hire a local contractor, triggering additional expenses, and that the costs were not expended on an "imminently dangerous" situation. Neither of these arguments have any merit.

The transcript of the hearing held before the bankruptcy court evidences that Judge Markovitz was well founded in holding that "these costs are necessary to the preservation of the bankruptcy estate as a whole." 144 B.R. at 971. The contractor who did the clean up work was chosen through a bidding process, (tr. 74); the contractor-submitted work invoices which were thoroughly scrutinized, (tr. 76–77); and invoices were sometimes reduced based on a determination that the expenses were inaccurate or inflated, (tr. 89). Further, Judge Markovitz had, as part of the record of the hearing, all of the invoices submitted by the contractor. (See tr. 77–78). Although debtors' characterize this documentation as an effort by DER to "inundate" the bankruptcy court with "reams of paper," (brief for appellant (Civil Action No. 93–11) at 15), it actually serves to support the bankruptcy court's findings. Indeed, even at this appellate review proceeding, the debtors have still failed to provide the court with any "credible challenge to the numbers." 144 B.R. at 971. As such, Judge Markovitz's finding that the administrative costs of remediation total at least $103,293 will be affirmed.

This Court will also affirm Judge Markovitz's finding that the remediation costs were necessary to abate an imminent risk of release of hazardous waste. Initially, it is worth noting that the debtors were in violation of the Pennsylvania Resource Conservation and Recovery Act, and it was this violation, along with debtors' failure to respond to DER's request to remediate, which led to the clean up costs. (See letter from Siekkinen, Borough of Waste Management, to Frank Conroy, dated July 23, 1990). On December 11, 1990, DER issued an "HSCA Response Justification Document" which found that an actual or potential threat to the environment existed and that a prompt interim response was justified. These actual violations, in and of themselves, support the bankruptcy court's finding that they were a valid claim entitled to administrative priority. See Midlantic, 474 U.S. at 505–06, 106 S.Ct. at 761–62.

Nonetheless, the record supports a finding that there was imminent danger as a result of these state law violations. In an October 5, 1990, hazardous site assessment report issued by DER, it was noted that the debtors' property was within 100 feet of the nearest residence, that the area is served by a public water supply, and that there are two schools within ½ mile of the facility. Further, this report stated that "the drums and cans are in various stages of deterioration. A 5–gallon can of spent PCE appears to be leaking." (See also tr. 44–45, 54, 67–68). The report continued, "water which has accumulated in the building has a visible sheen on the surface," and "during a complaint inspection on September 4, 1990, water was observed to be exiting the building." Additional support is found in the fact that DER's involvement was in part spurred by several calls for action from the public at large, including the White Oak Borough manager, State Senator Frank Pecora and State Representative Tom Michlovic. (See tr. 45–46, 53, 72–73).

Finally, debtors allege that the fact that DER "simply moved the barrels to another spot in the building" is proof that this

situation was not "precarious." (Brief for appellants (Civil Action No. 93–11) at 16). However, this approach taken by DER and its contractor was necessary to effectuate a safe remediation. DER's response justification document provided that the containers should be moved to "a dry secure area of the building." Once that was done, the containers should be "sampled ... for disposal analysis." Then, the DER provided that "the final removal determination will be made after the disposal analysis is complete and will be based on the environmental soundness and cost-effectiveness of each option." (*See* response justification document at p. 8).

The bankruptcy court found the danger to be imminent and, because the record supports that finding, this Court will affirm it.

### B. Civil Action No. 93–10

█ DER has appealed the bankruptcy court's determination that DER was not entitled to an additional 10 percent in administrative and legal costs pursuant to 35 P.S. § 6020.507(b). The bankruptcy court found that:

> The additional 10 percent above and beyond the actual cost of remediating the problem at Cello Print appears to be in the nature of an arbitrary surcharge. This additional amount does not appear to be "actual" expenditure. Moreover, DER has not demonstrated to the court's satisfaction that this surcharge was "necessary" for the preservation of the bankruptcy estate. It is not self-evident to the court that it was "necessary" in this regard. Accordingly, this portion of DER's claim—i.e., $10,329.30—will be disallowed.

144 B.R. at 971.

Under the Pennsylvania statute, there is no doubt that the actual "response costs" include not only the clean up costs, but also an additional amount for "administrative and legal costs incurred from [DER's] initial investigation up to the time that [DER] recovers its costs." 35 P.S. § 6020.507(d). "The amount attributable to administrative and legal costs shall be 10 percent of the amount paid for the response action or the actual cost, whichever is greater." *Id.* Therefore, had debtors not gone into bankruptcy and DER followed through on its response and investigation procedure pursuant to 35 P.S. § 6020.508, debtors would be liable for the actual response costs, including the clean up costs and, at least, an additional 10 percent in administrative and legal costs.

In the instant case, DER has provided both the bankruptcy court and this Court with sufficient proof that it has additional expenses other than those charged by the contractor which fall directly within the ambit of 35 P.S. § 6020.507(b). (*See* tr. 53 (dealing with public inquiries); 53–54 (inspecting the facility); 54–55 (preparing and drafting request for administrative expenses); 72–73 (drafting papers and arguing for access to the site); 73–74 (contacting debtors); 73–79 (retaining an environmental contractor); 73–78 (monitoring the contractor's work); 73–81 (reviewing work proposals); and 82–83 (preparing discovery during bankruptcy proceeding)). To the extent that the bankruptcy court found that these costs were not "actual" and/or "necessary" to the environmental clean up, such finding is clearly erroneous. Further, because the bankruptcy court applied an improper legal standard, these expenses were incorrectly excluded from the amount the bankruptcy court found to be an administrative expense.

The bankruptcy court employed reasoning in refusing to grant the additional 10 percent which "ignores that there are other policies also involved in § 503(b)." *In re N.P. Min. Co., Inc.,* 963 F.2d 1449, 1454 (11th Cir.1992). "The Supreme Court has not construed the meaning of administrative expenses narrowly." *Id. See, e.g., Reading Co. v. Brown,* 391 U.S. 471, 484–85, 88 S.Ct. 1759, 1766, 20 L.Ed.2d 751 (1968) (interpreting § 64(a)(1) of the former bankruptcy act, the predecessor to § 503(b)).

Because, according to *Midlantic, supra,* the trustee could not abandon the contaminated property in contravention of the state environmental law, the trustee also

could not "maintain[ ] or possess[ ] the estate in continuous violation of that same law," which would result in "an ongoing, potentially disastrous health hazard without remedy from those at fault." *In re Wall Tube*, 831 F.2d at 122. As found by the *In re Wall Tube* Court:

> It is undisputed that the hazardous wastes still within the debtor's estate ... presented a danger to the public's health and safety. The State of Tennessee, in the absence of compliance by the debtor's estate, was entitled by its own law to expend funds to assess the gravity of the environmental hazard. We thus find those expenses to be actual and necessary, both to preserve the estate in required compliance with state law and to protect the health and safety of a potentially endangered public.

*In re Wall Tube*, 831 F.2d at 124. Therefore, DER is entitled to recover those funds necessarily expended to "assess the gravity of the environmental hazard" and to procure a contractor to effectuate the environmental remediation.

The Pennsylvania Hazard Sites Clean Up Law defines precisely these "assessment" costs recoverable by DER. 35 P.S. § 6020.-507(b). Under Pennsylvania law, the "amount" of these costs is at least 10 percent of the clean up costs. *Id.* Because an operator outside the protection of the bankruptcy laws would be bound to pay the additional 10 percent, and in conjunction with the policy set forth in 28 U.S.C.

§ 959(b),[1] this Court finds that 35 P.S. § 6020.507(b) governs the actions of a trustee and mandates that this extra cost be included in the clean up cost calculation. *See Midlantic*, 474 U.S. at 505, 106 S.Ct. at 761 ("Title 28 U.S.C. § 959(b) provides additional evidence that Congress did not intend for the Bankruptcy Code to preempt all state laws...."); *N.P. Min.*, 963 F.2d at 1458.[2]

This Court finds that the bankruptcy court applied an incorrect legal standard in denying DER's request for a 10 percent addition to its response costs pursuant to 35 P.S. § 6020.507(b). Further, this Court finds that the Bankruptcy Code and the Pennsylvania statutes provide that 10 percent of the amount paid for the response action is the minimum "administrative and legal costs" to be added to all environmental clean up claims under the Hazardous Sites Clean Up Act. This additional 10 percent is not in the form of a "surcharge," as posited by the bankruptcy court. Rather, this additional 10 percent represents real and actual administrative and legal costs incurred by DER. These costs are recoverable as part of the administrative expenses for the environmental clean up.

### III. Estoppel

■■■ Debtors' final argument is that DER is estopped from making this claim for expenses based upon "early assurances that clean up would be subsidized by the superfund." (Brief for appellants (Civil Action No. 93–11) at 17). Under the Penn-

---

**1.** Title 28 U.S.C. § 959(b) provides that:

> [A] trustee ... appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, ... according to the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or possessor would be bound to do if in possession thereof.

**2.** It must be noted that the *N.P. Min.* Court expressly excluded from consideration as an administrative expense any penalty assessed post-petition "for the failure of the debtor in possession or the trustee to abate a pre-petition violation of the statute." *N.P. Min.*, 963 F.2d at 1459. However, the state statute at issue in the instant case does not prescribe non-compensatory "penalties," as did the statute in *N.P. Min.*

Rather, the Hazardous Sites Clean Up Act, 35 P.S. § 6020.102, *et seq.*, defines the amount of response costs recoverable. As such, the analysis of 28 U.S.C. § 959(b), set forth in *N.P. Min.*, and discussed above, applies to the appropriate definition of "amount" of "response costs recovery" provided for in 35 P.S. § 6020.507(b), and which should be applied by this Court. In fact, the *N.P. Min.* Court did not apply the established doctrine of administrative expense status for environmental clean up costs because the fines in issue in that case would not be going toward any environmental clean up. *N.P. Min.*, 963 F.2d at 1458. In the instant case, the very question is the definition of "amount" of response costs to be applied toward environmental clean up. The expenses which are included in the additional 10 percent are, contrary to those discussed in *N.P. Min.*, "compensatory in nature." *See N.P. Min.*, 963 F.2d at 1458.

sylvania law of estoppel, "[i]t is ... well established that mere negotiations toward an amicable settlement afford no basis for estoppel, nor do mistakes, misunderstandings or lack of knowledge...." *Com., Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779, 784 (1979). *See also Hauptmann v. Com., Department of Transportation,* 59 Pa.Cmwlth. 277, 429 A.2d 1207, 1209 (1981) ("Attempts to invoke estoppel against a commonwealth agency frequently meet with failure because of the difficulty of proving all of the necessary elements."). In the instant case, debtor Frank Conroy agreed that "the notice of violation that [he] received in August of 1990 and the administrative order specified to [him] that [he was] required to do what the department provided for in those documents." (Tr. 113). Having before him many documents which set forth in precise detail his responsibilities and required actions, and debtors' subsequent failure to act upon those official representations, it is inconceivable that debtors could establish the elements of estoppel and a remand is, therefore, not necessary. *See Shimko v. Unemployment Compensation Board of Review,* 54 Pa.Cmwlth. 578, 422 A.2d 726 (1980) (finding that alleged reliance on oral misrepresentations of an employee of the Office of Employment Security was not justified). *See also United States v. Pepperman,* 976 F.2d 123, 131–32 (3d Cir.1992) ("The apparent misunderstanding ... cannot be said to have imperiled the 'interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their government.' ") (*quoting Heckler v. Community Health Services,* 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984)). This Court finds no basis for application of estoppel principles.

An appropriate Order will be issued.

ORDER

AND NOW, this 12th day of May, 1993, upon consideration of the Appeal filed by the Commonwealth of Pennsylvania, Department of Environmental Resources (Civil Action No. 93–10), and the Appeal filed by Frank P. Conroy and Rosemary Conroy (Civil Action No. 93–11), from the Order of Bankruptcy Judge Bernard Markovitz entered on September 18, 1992, and for the reasons set forth in this Court's Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that the Bankruptcy Court's Order entered September 18, 1992, is AFFIRMED in part and REVERSED in part, to wit:

1. Said Order is AFFIRMED to the extent that the bankruptcy court found that the Department of Environmental Resources is entitled to $103,293 in administrative costs for clean up; and

2. Said Order is REVERSED to the extent that the bankruptcy court found that the Department of Environmental Resources is not entitled to an additional $10,329.30 as administrative and legal costs.

This matter is REMANDED to the bankruptcy court with instructions to add $10,329.30 to the amount of the Commonwealth of Pennsylvania, Department of Environmental Resource's administrative expense claim.